IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFERY FRANCIS,

　*Plaintiff*,

v.

STATE OF MARYLAND, *et al.*,

　*Defendants*.

Civil Action No. ELH-21-1365

## MEMORANDUM OPINION

In this civil rights case, plaintiff Jeffrey Francis,[1] a former inmate at the Maryland

Correctional Training Center ("MCTC"), filed suit pursuant to 42 U.S.C. § 1983 and Maryland

law, which he has twice amended. *See* ECF 1 (the "Original Complaint"); ECF 22 (the "First

Amended Complaint"); ECF 53 (the "Second Amended Complaint"). Francis asserts fifteen

claims against four defendants, stemming from a use of force incident on January 19, 2019,

involving defendant Robert Fleegle, an MCTC correctional officer (the "Incident"). ECF 53,

¶¶ 13–36. In addition to Fleegle, the Second Amended Complaint names defendants Richard

Dovey, the former Warden of MCTC; Robert L. Green, the former Secretary of the Maryland

Department of Public Safety and Correctional Services ("DPSCS"); and the State of Maryland (the

"State") (collectively, the "Supervisory Defendants"). Fleegle, Dovey, and Green (collectively,

the "Individual Defendants") are sued in their individual and official capacities. *Id.* ¶¶ 9–11.

---

[1] The case caption for this matter appears to misspell plaintiff's first name. In his filings (*see* ECF 1; ECF 22; ECF 53; ECF 55; ECF 64), plaintiff refers to himself as "Jeffrey," rather than the case caption spelling of "Jeffery." Therefore, I shall direct the Clerk to correct the docket to reflect the spelling as "Jeffrey."

The Second Amended Complaint includes multiple claims alleging violations of the United States Constitution, as follows:  Excessive Force, in violation of the Fourth Amendment (Count I);[2] Cruel and Unusual Punishment, in violation of the Eighth Amendment (Count II); violation of the right to Due Process under the Fourteenth Amendment (Count III); violation of the right to Free Speech under the First Amendment (Count IV); and a "*Monell* Claim," premised on *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978) (Count V).  ECF 53, ¶¶ 70–137.  Counts I through IV are brought against the Individual Defendants, and Count V is lodged against the State.

In addition, the suit contains claims alleging violations of the Maryland Declaration of Rights, lodged against all defendants, as follows: Excessive Force, in violation of Article 24 (Count VI); Cruel and Unusual Punishment, in violation of Articles 16 and 26 (Count VII); and violation of the Right of Free Speech under Article 40 (Count VIII).  *Id.* ¶¶ 138–77.  And, in Count IX, against Dovey and Green, Francis asserts "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision," in violation of Article 40 of the Maryland Declaration of Rights and the Eighth and Fourteenth Amendments to the Constitution.  *Id.* ¶¶ 178–91.

Finally, plaintiff alleges several State tort claims, as follows: Battery, against Fleegle (Count X); Intentional Infliction of Emotional Distress ("IIED"), against the Individual Defendants (Count XI); Conspiracy, against the Individual Defendants (Count XII); Negligent Hiring, Training, Retention, and Supervision, against the Supervisory Defendants (Count XIII); Gross Negligence, against Fleegle (Count XIV); and Respondeat Superior, against the State of Maryland (Count XV).  *Id.* ¶¶ 192–245.

_____

[2] Plaintiff labels each claim by number, such as "First Claim for Relief."  For convenience, I shall refer to each claim as a Count.

Fleegle has moved to dismiss the Second Amended Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 54), supported by a memorandum (ECF 54-1) (collectively, "Fleegle's Motion").   The Supervisory Defendants filed a "Motion to Dismiss Second Amended Complaint, Or, In the Alternative, for Summary Judgment," pursuant to Rule 12(b)(6) and Rule 56 (ECF 60), supported by a memorandum (ECF 60-1) (collectively, the "Motion" or the "Supervisory Defendants' Motion") and four exhibits (ECF 60-2 to ECF 60-5). Francis opposes Fleegle's Motion (ECF 55), as well as the Supervisory Defendants' Motion.  ECF 64.  The Supervisory Defendants filed a reply (ECF 67), supported by three exhibits filed under seal.  ECF 68; ECF 68-1; ECF 68-2.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny Fleegle's Motion and grant the Supervisory Defendants' Motion.

## I.      Factual and Procedural Background[3]

On January 19, 2019, Francis was an inmate at MCTC in Hagerstown, Maryland.  ECF 53, ¶ 13.  He was released from incarceration on March 3, 2021.  ECF 55 at 3.[4]

### A.  The Incident

Francis claims that at about 10:50 p.m., on January 19, 2019, Fleegle, a correctional officer at MCTC, asked Francis to come to his desk for reasons unknown to Francis.  ECF 53, ¶¶ 13–15. At the desk, Fleegle asked Francis for his ID number so that Fleegle could "request phone restrictions for [his] tier."  *Id.* ¶ 16.  In response, Francis asked for the forms needed to request an

---

[3] As discussed, *infra*, given the posture of the case, I must assume the truth of plaintiff's factual allegations.

[4] Throughout this Memorandum Opinion, I cite to the electronic pagination of the parties' filings, which does not always correspond to the page number imprinted on a submission.

administrative review of this decision.  ECF 53, ¶ 17.  According to Francis, Fleegle then became "irate and began to stand up." *Id.* ¶ 18.  At that point Francis called to a second correctional officer, *id.* ¶ 21, and "slowly backed up a few feet into a wall, at which point [he] could not back up anymore and was trapped." *Id.* ¶ 22.

Fleegle "was aggressively pursuing Mr. Francis and eventually was within striking distance." *Id.* ¶ 23.  Fleegle "began his assault" on Francis by "jabbing his index and middle finger into Mr. Francis's throat," which caused Francis to gag and impaired his ability to breathe.  *Id.* ¶ 24.  Fleegle then "jab[bed] [his] finger into" Francis's eye "in an attempt to gouge the eyeball," *id.*, and used his other hand to "grab and squeeze" Francis's face.  *Id.* ¶ 25.  Thereafter, Fleegle wrapped his hands around Francis's neck and choked him until he was unable to breathe.  *Id.* ¶ 26.  Francis notes that he stands at 5'7" and weighed 160 pounds at the time of the Incident, whereas Fleegle is 6'4" and weighed close to 300 pounds.  *Id.* ¶¶ 19, 20.

After Fleegle released plaintiff, Fleegle instructed Francis to "'cuff up,'" "which meant to place his hands behind his back." *Id.* ¶ 27.  As Francis laid on the ground with his arms "behind his back," Fleegle "took his knee and dropped all of his nearly 300 lbs" into Francis's spine.  *Id.*  Francis maintains that Fleegle handcuffed him "in a way as to intentionally exert maximum pain" on the wrists, possibly causing a bone to break.  *Id.* ¶ 28.  Another guard appeared and, along with Fleegle, grabbed the handcuff chain with so much force that Francis's "shoes came off" and "his arms were brought up to [his] head." *Id.* ¶ 29.  Francis alleges that he was then dragged to the corrections officers' break room in this position and thrown face-first to the floor, *id.* ¶ 29, where he laid "crying, wincing in pain and begging loudly for help." *Id.* ¶ 30.

According to Francis, the other guard left him in the room alone with Fleegle, who began to strike Francis on the head "with either a shod foot or a fist or another object," *id.* ¶ 32, and

threatened to kill him.  ECF 53, ¶ 33.  Francis recalls that at this point, another corrections officer came into the room and Fleegle told the officer that he (Fleegle) "had just snapped."  *Id.* ¶ 34. Fleegle instructed Francis to clean the blood and tears from his face, *id.* ¶ 35, gave him a bottle of water and ibuprofen, and advised Francis that if he wanted medical attention, he would "have to say that he was injured from falling."  *Id.* ¶ 36.  Francis states that he was then placed in solitary confinement for several weeks.  *Id.* ¶ 40.[5]  He was subsequently transferred to Roxbury Correctional Institute.  ECF 67 at 11.

As a result of the Incident, Francis states that he suffered injuries to his wrist, head, and throat (ECF 53, ¶ 37), and "suffered severe pain, contusions and lacerations, along with other injuries."  *Id.* ¶ 39.  Francis also notes that he "continues to receive mental health treatment for post traumatic stress disorder stemming from" the Incident and his subsequent placement in solitary confinement.  *Id.* ¶ 41.

### B.  Investigation, Discipline, and Criminal Charges

According to the Supervisory Defendants, and not disputed by plaintiff, Francis reported the Incident to another corrections officer approximately two hours after the Incident, who informed a supervisor.  ECF 67 at 8.  That corrections officer then sent Francis "to medical to authenticate and photograph his injuries, generated a Serious Incident Report to document the incident, and informed the Internal Investigative Division of the alleged assault."  *Id.*  Within 24 hours, MCTC initiated an investigation of the Incident through the DPSCS Intelligence

---

[5] The Supervisory Defendants dispute plaintiff's characterization of his housing.  Instead, they characterize his isolation as "administrative segregation," which was implemented "for his protection."  ECF 67 at 11.  They state that plaintiff was housed in administrative segregation for three weeks.  *Id.*

Investigative Division ("IID").  *Id.*; *see* ECF 53, ¶ 52 (An internal affairs investigation was initiated regarding the assault of Mr. Francis.").

The Supervisory Defendants state that, as a result of the investigation, it was determined that Fleegle used excessive force and violated "numerous standards of Conduct and Internal Administrative Process."  ECF 67 at 9.  Three other MCTC correctional officers were also found to have violated DPSCS Standards of Conduct during the course of the Incident.  *Id.*  Based on this investigation, MCTC initiated Disciplinary Charges against Fleegle.  *Id.*  Moreover, Warden Dovey recommended Fleegle's termination from employment.  *Id.*  But, Fleegle appealed the termination recommendation and ultimately signed a Disciplinary Action Settlement Agreement. *Id.* at n.3.  In lieu of termination, Fleegle served a period of suspension without pay and lost vacation time.  *Id.*

Additionally, the State brought criminal charges against Fleegle based on the Incident. ECF 53, ¶ 53.[6]  Fleegle was indicted for first degree assault and second degree assault, but the State ultimately dropped the charges.[7]

### C.  Procedural History

Through counsel, on June 2, 2021, Francis brought suit against Fleegle, Dovey, Green, and the State.  He alleged federal constitutional violations, violations of the Maryland Declaration of

---

[6] Plaintiff does not specify the date the charges were filed.

[7] *See* Don Aines, *State drops assault charges against MCTC officer*, THE HERALD-MAIL (Aug. 17, 2020 at 4:30pm), https://www.heraldmailmedia.com/story/news/2020/08/17/state-drops-assault-charges-against-mctc-officer/115816974/.

I take judicial notice of the charges filed against Fleegle, as it is a matter of public record and pertinent to the facts of this case.  *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

Rights, and State common law torts.  ECF 1 (Original Complaint).  On August 26, 2021, the Supervisory Defendants moved to dismiss or, in the alternative, for summary judgment.  ECF 17.

Thereafter, on September 16, 2021, Francis filed an Amended Complaint against Fleegle, Dovey, and Green.  ECF 22 (First Amended Complaint).  However, the First Amended Complaint did not name the State as a defendant.  *Id.*  Defendants Dovey and Green again moved to dismiss the First Amended Complaint or, in the alternative, for summary judgment (ECF 27), and Fleegle moved to dismiss the suit.  ECF 39.

By Memorandum Opinion (ECF 44) and Order (ECF 45) of December 2, 2021, I concluded that the First Amended Complaint necessarily rendered moot the original motion to dismiss (ECF 17).  On that basis, I denied that motion.  ECF 44.

Then, on January 14, 2022, Francis filed a suit in the Circuit Court for Baltimore County (the "Circuit Court") against Dovey, Green, and the State, based on the same Incident, and asserting the same claims for relief as in this case.  Defendants timely removed the Circuit Court case to this Court.  *See Francis v. State of Maryland et al.*, ELH-22-806, ECF 1 (Notice of Removal); ECF 2 (Circuit Court Complaint).  The parties subsequently filed a joint motion to consolidate the two cases (ECF 51), which I granted (ECF 52).  In the same Order, I granted Francis the opportunity to file a consolidated amended complaint and denied as moot the motions in this case to dismiss the First Amended Complaint (ECF 27; ECF 39).  The Second Amended Complaint (ECF 53) followed on May 20, 2022.

## II.    Standards of Review

### A.

The Supervisory Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  *See* ECF 60.  A

motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(d), however, a court, in its discretion, may consider matters outside of the pleadings. If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Hous., LLC*, 672 F. App'x at 622 (citation omitted) ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'"). However, when the movant expressly captions its motion as one for summary judgment "in the alternative," and submits matters outside the pleadings for the court's

consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2004, April 2022 update). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*.

Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2012); *see Shaw v. Foreman,* ___ F. 4th ___, 2023 WL 1486310, at *4 (4th Cir. Feb. 3, 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed

discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874–75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008). But, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). The Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit.'" *Harrods*, 302 F.3d at 244 (internal citations omitted). Despite this, the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth

Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). And, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

On the other hand, "'[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of [Rule 56(d)] to set out reasons for the need for discovery in an affidavit.'" *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (quoting *Hayes v. N. State L. Enf't Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993)); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 n.3 (4th Cir. 1990) ("[I]f plaintiffs genuinely were concerned that defendant's motion was premature, plaintiffs should have sought relief under Fed. R. Civ. P. 56[(d)].").

The Supervisory Defendants attached four exhibits to their motion (ECF 60): a Declaration of Tina Hull, the Litigation Coordinator for MCTC, as to records with regard to Francis's housing after the Incident (ECF 60-2); a Declaration of Jane Sachs, the Director of Correctional Training for DPSCS, as to MCTC's training policies and Officer Fleegle's training records (ECF 60-3); a Declaration of Lisa Wagner, the Acting Manager–Records Unit for Information, Technology and Communications Division of Record Management for DPSCS, as to Officer Fleegle's disciplinary record prior to the Incident (ECF 60-4); and an Affidavit of Joyce Miller, the Director of Insurance of the Insurance Division in the State Treasurer's Office, as to whether the Treasurer's Office received notice of Francis's claims in this matter (ECF 60-5).

In addition, the Supervisory Defendants attached three exhibits to their Reply (ECF 67), filed under seal: IID records regarding its investigation of the Incident (ECF 68); MCTC's disciplinary notice to Officer Fleegle following the Incident (ECF 68-1); and Warden Dovey's letter to Officer Fleegle regarding his termination (ECF 68-2).

Francis requests, in a footnote in his opposition (ECF 64 at 4 n.1), that if the Court opts to treat the Supervisory Defendants' Motion as one for summary judgment, he be given an opportunity to conduct discovery. He contends that "without the opportunity to conduct at least some discovery, [he] has no real chance to adequately prove his case and/or to rebut the ideas set forth in the documents attached to the" Supervisory Defendants' Motion. *Id.* at 4. However, Francis neither submitted an affidavit to the Court nor explained the reasons for his failure to do so. Moreover, he does not explain what information he would seek in discovery or how it is necessary to his opposition or his case more broadly.

Francis also fails to address any of the evidence presented by the Supervisory Defendants. He states only that "[t]here has been no testimony concerning the attached documents, they have neither been scrutinized nor authenticated." *Id.* But, he does not explain what testimony is required, nor does he point to any disputed issues of material fact.

Francis is not a *pro se* litigant. Nevertheless, despite the failures identified above, I decline to address the Supervisory Defendants' Motion as one for summary judgment.

As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray*, 741 F.3d at 483; *accord Putney*, 656 F. App'x at 639. And, the Fourth Circuit recently reaffirmed this principle when it concluded that a district court abused its discretion by granting summary judgment before discovery, even though the plaintiff failed to

comply with Rule 56(d), because "the district court was on fair notice of potential disputes as to the sufficiency of the summary judgment record." *Shaw*, 2023 WL 1486310, at *129. The Fourth Circuit acknowledged that much of the evidence the plaintiff needed involved the subjective knowledge of the prison officials or was in their exclusive control. *Id.*; *see also Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021).

Accordingly, I conclude that, without the benefit of discovery, it would be premature to construe the Supervisory Defendants' Motion as one for summary judgment. Therefore, I shall construe the Motion as a motion to dismiss.

## B.

Fleegle and the Supervisory Defendants each move to dismiss under Fed. R. Civ. P. 12(b)(6). ECF 54; ECF 60. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide

the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond,*

*Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in original) (quoting *Forst*, 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger*, 510 F.3d at 450.

However, under limited circumstances, when a court is resolving a Rule 12(b)(6) motion, it may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508. In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (internal citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

"[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822

F. 3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Vol. Fire Dep't.*, 684 F.3d at 467. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "As examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 322, (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."   The Court may also "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment."  *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir.); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records").

As discussed, the Supervisory Defendants attached four exhibits to their Motion (ECF 60-2 through 60-5) and three exhibits to their Reply (ECF 68 through 68-2).  However, I cannot consider these documents at this juncture.  As an initial matter, Francis has challenged the authenticity of the exhibits attached to the Supervisory Defendants' Motion.  *See* ECF 64 at 4 (noting that the documents attached as exhibits "have neither been scrutinized nor authenticated"). Even so, the documents are not "integral" to the Second Amended Complaint because they do not "give rise to the legal rights asserted."  *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 (citation omitted).  That Francis references the disciplinary investigation into Officer Fleegle does not alter this conclusion.  *See Goines*, 822 F.3d at 166 (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *see also Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015) (finding that a document with "no independent legal significance to [plaintiff's] claim" was not integral to complaint).  Thus, in resolving the Motion, I will not consider the exhibits submitted by the Supervisory Defendants.

### III.        Discussion

### A.  Federal Law Claims

### 1.  Section 1983 Generally

Francis's federal law claims are premised on 42 U.S.C. § 1983.  Under § 1983, a plaintiff may file suit against any person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).  "The first step in any such claim is to pinpoint the specific right that has been infringed."  *Safar*, 859 F.3d at 245.

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326, (1941)); *see also Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.").

### 2.  Sovereign Immunity

Francis brings § 1983 claims against the State as well as against Fleegle, Dovey, and Green in their individual and official capacities. ECF 53, ¶¶ 9–11. The Supervisory Defendants' Motion initially contended that they were entitled to Eleventh Amendment immunity for all federal law claims brought against them. ECF 60 at 25. But, they withdrew that argument (ECF 67 at 16) after Francis responded that they waived this immunity when they removed the case to federal court. ECF 64 at 19. Nevertheless, I will address the issue, as it pertains to this Court's subject matter jurisdiction.

The Fourth Circuit has reiterated that the defense of sovereign immunity is a jurisdictional bar, explaining that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 417 (2018); *see*

*also Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021) (recognizing sovereign immunity as a jurisdictional limitation and describing it as "a weighty principle, foundational to our constitutional system").  Thus, in the absence of waiver or a valid congressional abrogation of sovereign immunity, the states enjoy immunity from suits for damages brought in federal court by their own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890).

A plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014); *The Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

The question at this juncture is whether the State's removal of the Circuit Court case defeats the State's its immunity to suit in federal court.

### a.  Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."  *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court.").  As discussed, *infra*, Eleventh Amendment immunity may also extend to "state agents and state instrumentalities."  *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

-21-

The Supreme Court has explained: "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suit for damages by citizens against their own States." *Garrett*, 531 U.S. at 363 (collecting cases); *see Allen v. Cooper*, ___ U.S. ___, 140 S. Ct. 994, 1000 (2020); *see also Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) ("The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'") (quoting *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)); *see, e.g.*, *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, __ U.S.__, 140 S. Ct. 903 (2020); *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012).

However, "[t]he Eleventh Amendment bar to suit is not absolute." *Feeney*, 495 U.S. at 304. There are exceptions to the Eleventh Amendment's prohibition. In *Lee-Thomas*, 666 F.3d 244, the Court explained, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

Of relevance here, by statute a State may waive its Eleventh Amendment immunity from suit in federal court. *Pense*, 926 F.3d at 100 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198

(1996)).  But, the waiver must be both clear and express.  *Feeney*, 495 U.S. at 305; *Atascadero*, 473 U.S. at 241; *Coll. Sav. Bank v. Fla. Prepaid Post Secondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999); *Pense*, 926 F.3d at 101.  This issue is discussed, *infra*.

### b.  Common Law Sovereign Immunity

The Eleventh Amendment did not create State sovereign immunity.  Rather, it preserved the sovereign immunity that the States enjoyed prior to the formation of the Union.  *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011).  The preeminent purpose of State sovereign immunity is to "accord states the dignity that is consistent with their status as sovereign entities." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

The Fourth Circuit recently clarified that, "[w]hile courts often discuss both doctrines under the banner of Eleventh Amendment immunity, 'the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.'" *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021) (per curiam).  The Court said that, "'as the Constitution's structure, its history, and the authoritative interpretations by [the Supreme] Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.'"  *Id.* (alteration in *Williams*) (quoting *Alden*, 527 U.S. at 713).

Sovereign immunity is "a weighty principle, foundational to our constitutional system." *Cunningham*, 990 F.3d at 365.  As indicated, the preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities . . . ." *Fed. Mar. Comm'n*, 535 U.S. at 760.

Sovereign immunity "protects the States, their agencies, and State officials acting in their official capacities from being sued in federal court without their consent." *Murphy v. Commonwealth of Va.*, 2022 WL 17484286, at *1 (4th Cir. Dec. 7, 2022) (per curiam); *see Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"); *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018), *aff'd*, 140 S. Ct. 994 (2020).

Sovereign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, sometimes referred to as an "arm of the state." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of the Univ. of Cal.*, 519 U.S. at 429; *Pense*, 926 F.3d at 100; *McCray*, 741 F.3d at 483; *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005). Put another way, sovereign immunity applies when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Lane v. Anderson*, 660 F. App'x 185, 195–96 (4th Cir. 2016) (quoting *Cash v. Granville Cnty. Bd.*

-24-

*of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (cleaned up).  But, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction."  *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto*, 773 F.3d at 543); *see DiCocco v. Garland*, 18 F.4th 406, 414 (4th Cir. 2021).

On the other hand, sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'" *Ram Ditta by & through Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979)).  Moreover, personal capacity suits, which seek to impose individual liability on a government official for an action taken under color of State law, are also not barred by the Eleventh Amendment.  *Murphy*, 2022 WL 17484286, at *2.  And, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

As mentioned, by statute a state may waive its sovereign immunity and permit suit in federal court.  *See Lapides*, 535 U.S. at 618; *see also Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d 249.  But, the test to determine whether a state has waived its immunity from suit in federal court is a "stringent" one.  *Atascadero State Hosp.*, 473 U.S. at 240; *see Pense*, 926 F.3d at 101. Under *Atascadero*, 473 U.S. at 254, a court may find that a state has waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as

will leave no room for any other reasonable construction." (internal quotation marks and alteration omitted); *accord Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 250–51.

The Supreme Court has held that a state waives its Eleventh Amendment immunity when it voluntarily removes a case to federal court. *See Lapides*, 535 U.S. 613, 619–20 (2002). In contrast, "a state does not waive its [State] sovereign immunity by removing a suit to federal court." *Williams*, 850 F. App'x at 174 (citing *Passaro*, 935 F.3d at 247). Rather, "a state's removal of a suit to federal court waives sovereign immunity only if the state has consented to suit in its own courts." *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020). And, federal law requires that a state make a "clear statement" to waive its sovereign immunity. *Passaro*, 935 F.3d at 248.

### c.   Maryland Law

"The doctrine of sovereign immunity has long been recognized as applicable in actions against the State of Maryland and its official representatives." *Stern v. Bd. Of Regents, Univ. Sys. Of Md.*, 380 Md. 691, 700, 846 A.2d 996, 1001 (2004). As the Supreme Court said in *Will*, 491 U.S. at 71 (internal citation omitted): "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *See also Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam) ("The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."); *Pennhurst*, 465 U.S. at 101–02 ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.").

Notably, the Maryland Court of Appeals[8] has held that a suit cannot be brought against the State "unless the General Assembly has specifically waived the doctrine" of sovereign immunity. *Stern*, 380 Md. at 701, 846 A.2d at 1001. Moreover, "courts read statutory waiver language 'narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat.'" *Williams v. Morgan State Univ.*, GLR-19-5, 2021 WL 3144890, at *3 (D. Md. July 26, 2021) (quoting *Stern*, 380 Md. at 720, 846 A.2d at 1012–13), *aff'd in part*, *vacated in part, Williams*, 850 F. App'x 172 (4th Cir. 2021).

To my knowledge, the Maryland General Assembly has waived State sovereign immunity through the Maryland Tort Claims Act ("MTCA"), §§ 12-101 *et seq.* of the State Government Article ("S.G.") of the Maryland Code (2021 Repl. Vol.), for state tort and constitutional claims. Thus, I must determine whether, by enacting the MTCA, the Maryland legislature also waived its immunity for federal claims.

The MTCA states, in pertinent part: "This subtitle does not . . . waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States." S.G. § 12-103. The district judge in *Williams* said: "This Court has confronted the issue on several other occasions and each time has . . . found that Maryland's waiver of sovereign immunity as to tort claims did not extend to claims arising under federal statutes." *Williams*, 2021 WL 3144890,

---

[8] In November 2022, the Maryland electorate voted to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214#:~:text=Effective%20immediately %2C%20the%20Court%20of,the%20Appellate%20Court%20of%20Maryland. However, to avoid confusion, I will refer to the Maryland courts by the names that were in effect when the cited cases were decided.

at *4 (providing an overview of decisions by courts in this district); *see*, *e.g.*, *Bozarth v. Md. State Dep't of Educ.*, DLB-19-3615, 2021 WL 1225448, at *4 (D. Md. Mar. 31, 2021); *Sutton v. Dep't of Hum. Servs.*, RDB-19-0542, 2019 WL 4447379, at *3 (D. Md. Sept. 17, 2019); *Johnson v. Md. Transit Admin.*, CCB-18-3768, 2019 WL 3290982, at *2 (D. Md. July 19, 2019), *aff'd*, 821 F. App'x 258 (4th Cir. 2020) (per curiam).

With this in mind, I conclude that the State's removal of this case does not constitute a waiver of its immunity, or the immunity of its officials acting in their official capacity, from § 1983 liability. Accordingly, all federal claims against the Individual Defendants, in their official capacities, shall be dismissed.

### 3. Claims against the State

Count V of the Second Amended Complaint asserts a *Monell* claim against the State, pursuant to 42 U.S.C. § 1983. ECF 53, ¶¶ 126–37. In *Monell*, 436 U.S. at 690, the Supreme Court ruled that "[l]ocal governing bodies . . . can be sued directly under § 1983." But, the Court has made clear that "it does not follow that if municipalities are persons then so are States." *Will*, 491 U.S. at 70. Indeed, the Court has said that states are not "persons" under § 1983 and therefore are not subject to claims under the statute. *Id.* at 65.

The *Will* Court explained: "States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* 'to local government units which are not considered part of the State for Eleventh Amendment purposes.'" *Id.* at 70 (quoting *Monell*, 436 U.S. at 690 n.54.). Thus, I shall dismiss Count V.

### 4. Claims against Fleegle

Officer Fleegle presents only one argument in support of his request to dismiss all federal law claims brought against him in the Second Amended Complaint: that Francis failed to allege

that he exhausted the administrative remedies available to him, pursuant to the Prison Litigation Reform Act ("PLRA"). ECF 54 at 5–6. But, the requirements of the PLRA plainly do not apply in this case.

The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, *id.* § 1997e(h), "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." But, this does not encompass a *former* inmate. Indeed, "[a] former inmate who has been released is no longer 'incarcerated or detained' for the purposes of § 1997e(h) and therefore does not qualify as a 'prisoner' subject to the PLRA." *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007).

Moreover, "it is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies." *Id.* (citing *Norton v. City of Marietta,* 432 F.3d 1145, 1150 (10th Cir. 2005)). Francis was not incarcerated at the time he filed this action. ECF 55 at 3. Thus, he is not subject to the PLRA's exhaustion requirement.

Notably, Fleegle's Motion did not present any other argument in support of his request for dismissal of the federal claims asserted against him. Therefore, I shall deny Officer Fleegle's Motion with regard to the federal law claims asserted against him in his individual capacity.

### 5. Claims against Dovey and Green

### a. Supervisory Liability

As indicated, Francis asserts four federal claims against Dovey and Green, pursuant to 42 U.S.C. § 1983:  Excessive Force, in violation of the Fourth Amendment (Count I); Cruel and Unusual Punishment, in violation of the Eighth Amendment (Count II); violation of his right to Due Process, in contravention of the Fourteenth Amendment (Count III); and violation of his right to Free Speech, guaranteed by the First Amendment (Count IV).  ECF 53, ¶¶ 70–126.[9]  These claims are premised on a theory of supervisory liability, rather than the personal conduct of Dovey or Green.  *See* ECF 64 at 4–5.

To pursue a § 1983 claim against a defendant in his individual capacity, a plaintiff must show that the defendant "acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (same); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (same).  In general, it is insufficient to show that subordinates of a sued official deprived plaintiff of his rights, as the doctrine of respondeat superior does not apply in § 1983 cases.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (determining that there is no respondeat superior liability under § 1983).

---

[9] In Count IX, Francis asserts a claim of "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision," in violation of the Eighth and Fourteenth Amendments as well as Article 40 of the Maryland Declaration of Rights.  *Id.* ¶¶ 178–91.  Article 40 pertains to free speech.

In response to the Supervisory Defendants' Motion, plaintiff states that the "First, Second, Third, and Fourth Claims are brought against the individual Defendants (Defendant Fleegle and the individual Supervisory Defendants Dovey and Green) for alleged violations of the federal constitution" (ECF 64 at 4), and he reiterates that the "Sixth, Seventh, Eighth, and Ninth Claims are based upon Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights." *Id.* at 7.  Therefore, I will construe Count IX as one pursuant to State law, rather than federal law.

If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail. *Vinnedge*, 550 F.2d at 928.

The Fourth Circuit has stated: "A supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013). Pursuant to § 1983, liability for supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994):

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to. . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See also Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

To qualify as "pervasive," a plaintiff must demonstrate that the challenged conduct "is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799. It is therefore insufficient to point "to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373). But, a supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official for his deliberate

indifference or acquiescence to "the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799.

Additionally, the Supreme Court explained in *Iqbal*, 556 U.S. at 677, that "a supervisor's mere knowledge" that his subordinates have engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor is only liable for his "own misconduct." The *Iqbal* Court also "explained that in order to state a claim for supervisory liability, 'a plaintiff must plead that *each* [supervisory] defendant, through the official's *own individual actions,* has violated the Constitution." *Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2012) (Wilkinson, J., concurring) (emphasis and alteration in *Evans*) (quoting *Iqbal*, 556 U.S. at 676). The *Iqbal* Court concluded that the allegations as to supervisory liability, which were based on specific claims of each official's involvement in establishing and executing the policies, were "bare assertions" that amounted to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 554–55).

The Second Amended Complaint suffers from the kind of inadequacies addressed by the Supreme Court in *Iqbal*. It is replete with conclusory assertions that Green and Dovey "were aware, or should have been aware," of Officer Fleegle's propensity for violence (ECF 53, ¶ 65; *see also id.* ¶¶ 131, 133, 135, 136); that they "failed to take reasonable steps to protect Mr. Francis" (*id.* ¶¶ 80, 116); and that they were "deliberately indifferent" to ongoing use of excessive force by correctional officers. *Id.* ¶¶ 81, 102, 134. But, it is devoid of allegations that Warden Dovey or Secretary Green personally participated in the events underlying Francis's claims.

Although plaintiff claims that Dovey and Green had actual or constructive knowledge of other violence by correctional officers, he does not point to any example of constitutional violations of which they were aware but failed to act. Indeed, the Second Amended Complaint

does not allege that Dovey or Green failed to act in this particular instance.[10]  Thus, the allegations in the Second Amended Complaint, standing alone, cannot give rise to supervisory liability pursuant to *Iqbal*'s standard.

Francis also claims that Dovey and Green are liable because "CO Fleegle's actions were the result of the custom, polic[y], and practice" promulgated by them.  ECF 53, ¶ 115.  But, these claims are again insufficient under the standard in *Iqbal*, 556 U.S. 662.

In *Iqbal*, *id.* at 680 (quoting the respondent's complaint), the Supreme Court determined that allegations that defendants "'knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]' to harsh conditions of confinement 'as a matter of policy . . . and for no legitimate penological interest'" were "not entitled to the assumption of truth."  The allegations against Dovey and Green are even less precise than those in *Iqbal*.  With one exception, discussed *infra*, Francis does not specify what policy or custom he refers to for any given charge, nor does he indicate what role either defendant played in promulgating the alleged policy or custom.

As noted, Francis identifies one policy with sufficient specificity: the "solitary confinement" policy.  However, this policy is only pleaded within the context of Francis's State law claims and is never specifically implicated in the federal constitutional claims.  Even if it were referenced with regard to the federal constitutional claims, however, it would still present an insufficient basis for relief.

Francis asserts that after the Incident, he was placed "in solitary confinement for several weeks."  ECF 53, ¶ 40.  In Count IX, he states that Dovey and Green "have a policy of punishing victims of correction officer assaults," specifying that the policy "requires inmates that have been

---

[10] Because this claim is being analyzed pursuant to *Iqbal*, which assesses sufficiency of a claim in light of a motion to dismiss, I do not discuss the evidence presented by defendants.  *See* ECF 68-1; ECF 68-2.

assaulted by corrections officers to be placed in solitary confinement." *Id.* ¶ 185. Francis contends both that the policy itself violated his State constitutional rights, and that "the policy encouraged CO Fleegle to assault Mr. Francis because CO Fleegle knew that the policy incentivizes" inmates to remain silent after being assaulted to avoid being placed in isolation. *Id.* ¶¶ 186–87.

Even assuming that Count IX was brought as a federal constitutional claim, it could not survive because there is no indication as to the role Dovey or Green played in the promulgation or implementation of this policy. *See id.* ¶¶ 46, 185, 188. And, importantly, Francis's claim would still fail under the Eighth and Fourteenth Amendment analyses, discussed next.

### b. Fourteenth Amendment

Following a valid conviction, an individual may be "constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system" as long as the conditions of confinement do not "otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). "Absent a showing of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' prisoners do not have a constitutional right to due process before being denied access to programs or particular housing." *Johnson v. Simmons*, GJH-20-559, 2021 WL 1087059, at *9 (D. Md. Mar. 22, 2021) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

However, Fourth Circuit precedent "does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015). "Rather, inmates must first establish that an interest in avoiding onerous or restrictive confinement conditions 'arise[s] from state policies or regulations' (e.g., a regulation mandating periodic review)." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (quoting *Prieto*, 780 F.3d at 249).

-34-

In *Incumaa*, 791 F.3d at 527, in finding that the appellant satisfied the first step of the analysis, the Fourth Circuit relied on "uncontroverted evidence that the Department policy here mandates review of . . . security detention every 30 days."  Here, there is no such showing.  Francis does not identify any State policy or regulation that established his interest in avoiding placement in isolation.  Thus, the claim would be insufficient under the Fourteenth Amendment, and I need not engage in the "'fact specific' comparative exercise" required for the second step of this analysis.  *Johnson*, 2021 WL 1087059, at *9 (quoting *Beverati v. Smith*, 120 F.3d 500, 502–03 (4th Cir. 1997)).

### c.  Eighth Amendment

An Eighth Amendment deliberate indifference claim is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety."  *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97–98 (4th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).  The Fourth Circuit has characterized this standard as an "exacting" one.  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

The Fourth Circuit has emphasized the importance of a "penological justification" to determine whether a prisoner's Eighth Amendment rights have been infringed upon when placed in solitary confinement.  In *Porter v. Clarke*, 923 F.3d 348, 357 (4th Cir. 2019), the Court held that, under certain circumstances, "solitary confinement poses an objective risk of serious psychological and emotional harm to inmates, and therefore can violate the Eighth Amendment." However, the Court clarified that "legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement, . . . even though such conditions

create an objective risk of serious emotional and psychological harm." *Id.* at 362–63. "Put simply, prison officials tasked with the difficult task of operating a detention center may reasonably determine that prolonged solitary detention of the inmate is necessary to protect the well-being of prison employees, inmates, and the public or to serve some other legitimate penological objective." *Id.* at 363 (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012)).

On the one hand, it is "[w]ithout question" that "'maintaining safety and order at [a detention center] requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Porter*, 923 F.3d at 386 (alterations in *Porter*) (quoting *Florence*, 556 U.S. at 362). But, a court must also recognize that one of the "'essential principle[s]' protected by the Eighth Amendment is that 'the State must respect the human attributes'" of the inmates in their care. *Porter*, 923 F.3d at 380 (alteration in *Porter*) (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)).

Francis alleges that "DPSCS regularly punishes inmates by placing them in solitary confinement . . . isolating the inmate and only allowing inmates out of their cells for one hour or less each day." ECF 53, ¶ 46. Additionally, the Second Amended Complaint states: "A person segregated in this manner may receive no calls, no visits or other time for recreation." *Id.* ¶ 47. And, Francis claims that he receives mental health treatment for post-traumatic stress disorder "stemming from CO Fleegle's assault and the subsequent placement in solitary confinement." *Id.* ¶ 41.

The Supervisory Defendants contend that, contrary to plaintiff's assertion, Francis was placed in "administrative segregation," which is distinct from "solitary confinement." ECF 60 at 12. However, at the motion to dismiss stage, I must assume the truth of plaintiff's allegations.

-36-

Therefore, I assess the validity of this claim based on the assertion that Francis was placed in solitary confinement.

Further, the Supervisory Defendants contend that plaintiff was removed from the general prison population "for his protection" pending the investigation of the Incident. *Id.* Therefore, they assert a penological justification for the confinement: plaintiff's own safety. And, Francis fails to address this justification.

In any event, the allegations in the Second Amended Complaint do not satisfy "exacting" standards. *Jackson*, 775 F.3d at 178. Francis explains the conditions of solitary confinement in broad strokes, but with no particularity as to his own experience. Francis does not allege that the Supervisory Defendants "kn[ew] of and disregard[ed]" a substantial risk to his health or safety. *Thompson*, 878 F.3d at 97. In support of his claim that he was exposed to a "substantial risk of harm," *Thompson* 878 F.3d at 97, he states only that an article in the Journal of the American Academy of Psychiatry and the Law "has equated this form of isolation to torture." ECF 53, ¶ 48. The existence of a single journal article, standing alone, does not demonstrate that the defendants knew of and disregarded a substantial risk of harm imposed by solitary confinement.

In sum, Francis's allegations of constitutional violations based on his alleged placement in solitary confinement do not state a viable constitutional claim under the Eighth Amendment.

### d. Conclusion

For the reasons discussed above, plaintiff does not state claims against Dovey and Green in Counts I, II, III, and IV that assert constitutional violations pursuant to 42 U.S.C. § 1983. Therefore, the claims are subject to dismissal.[11]

---

[11] Because I find that the allegations in the Second Amended Complaint are insufficient to support claims for constitutional violations, I need not address the arguments of Dovey and Green that they are entitled to qualified immunity.

## B.  State Law Claims

As noted, Francis asserts multiple State constitutional claims against all defendants: Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count VI); Cruel and Unusual Punishment, in violation of Articles 16 and 26 (Count VII); and Free Speech infringement, in violation of Article 40 (Count VIII).  ECF 53, ¶¶ 138–77.  In addition, as discussed, Francis charges Dovey and Green with Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision, in violation of Article 40 of the Maryland Declaration of Rights (Count IX).  *Id.* ¶¶ 178–91.

Francis also asserts four tort claims against the defendants under Maryland law:  Intentional Infliction of Emotional Distress, against Fleegle, Dovey, and Green (Count XI); Conspiracy, against Fleegle, Dovey, and Green (Count XII); Negligent Hiring, Training, Retention, and Supervision, against the State of Maryland, Dovey, and Green (Count XIII); Gross Negligence, against Fleegle (Count XIV); and Respondeat Superior, against the State of Maryland (Count XV). *Id.* ¶¶ 192–245.

As a threshold matter, both Fleegle and the Supervisory Defendants argue that the State law claims in the Second Amended Complaint are barred because Francis failed to adhere to the MTCA notice requirement.  ECF 54 at 6–8; ECF 60 at 26–31.

### 1.  The MTCA Generally

The MTCA offers "a limited waiver of sovereign immunity and 'is the sole means by which the State of Maryland may be sued in tort.'"  *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (citation omitted); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993); *Mitchell v. Hous. Auth. of Balt. City*, 200 Md. App. 176, 201–02, 26 A.3d 1012, 1027–28 (2011).  It grants immunity to State personnel from liability "for a tortious act or

omission that is within the scope of the public duties of the State personnel and is made without

malice or gross negligence."  Md. Code (2020 Repl. Vol.), § 5-522(b) of the Courts and Judicial

Proceedings Article ("C.J."); *see also* S.G. § 12-105 ("State personnel shall have the immunity

from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article.").

Moreover, at the relevant time, S.G. § 12-104 stated, in part (italics in original):[12]

(a) *In general.* — (1) Subject to the exclusions and limitations in this subtitle and
notwithstanding any other provision of law, the immunity of the State and of its
units is waived as to a tort action, in a court of the State, to the extent provided
under paragraph (2) of this subsection.
(2) The liability of the State and its units may not exceed $400,000 to a
single claimant for injuries arising from a single incident or occurrence.
(b) *Exclusions and limitations.* — Immunity is not waived under this section as
described under § 5-522(a) of the Courts and Judicial Proceedings Article.

C.J. § 5-522(a)(4) is also pertinent.   It states: "Immunity of the State is not

waived . . . for . . . Any tortious act or omission of State personnel that: (i) Is not within the scope

of the public duties of the State personnel; or (ii) Is made with malice or gross negligence[.]"  And,

C.J. § 5-522(b) is relevant as well.  It states, in part: "State personnel . . . are immune from suit in

courts of the State and from liability in tort for a tortious act or omission that is within the scope

of the public duties of the State personnel and is made without malice or gross negligence. . . ."

*See also Cooper v. Rodriguez*, 443 Md. 680, 707, 118 A.3d 829, 845 (2015).

"The Court of Appeals of Maryland has observed that, when read in tandem, [S.G. § 12-

104 and C.J. § 5-522] establish that the tort 'liability of the State and [the tort] liability of individual

State personnel are mutually exclusive.  If the State is liable, the individual is immune; if the

individual is liable, the State is immune.'"  *Marks v. Dann*, DKC-13-0347, 2013 WL 8292331, at

---

[12] In 2021, the Maryland General Assembly amended S.G. § 12-104, effective July 1, 2022.
*See* 2021 Md. Laws, Ch. 59.

*7 (D. Md. July 24, 2013) (alteration in *Marks*) (quoting *Newell v. Runnels*, 407 Md. 578, 635, 967 A.2d 729, 763 (2009)).

The "MTCA does not distinguish between constitutional torts and common law torts. Accordingly, the same standards of malice and gross negligence govern" State common law tort claims and violations of State constitutional rights. *Newell*, 407 Md. at 640 n.28, 967 A.2d at 766 n.28. Moreover, statutory immunity under the MTCA, discussed *infra*, applies to both negligent and intentional torts. *See Lee v. Cline*, 384 Md. 245, 266, 863 A.2d 297, 310 (2004); *see also Espina v. Jackson*, 442 Md. 311, 325, 112 A.3d 442, 450 (2015).[13]

### 2. MTCA Notice Requirement

Of import here, the MTCA imposes a notice requirement for claims brought under the statute. *See Gray v. Maryland*, 228 F. Supp. 2d 628, 641 (D. Md. 2002) ("In order for a plaintiff to bring a claim against the State or a state officer under the MTCA, certain notice requirements must be met."). The notice requirement contained in the MTCA, which was amended by the Maryland General Assembly in 2015 and 2016, states, in part, S.G. § 12-106(b), (c) (italics in original):

> (b) *Claim and denial required.* — Except as provided in subsection (c) of this section, a claimant may not institute an action under this subtitle unless:
> > (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;
> > (2) the Treasurer or designee denies the claim finally; and
> > (3) the action is filed within 3 years after the cause of action arises.
> (c) *Effect of failure to submit written claim.* — (1) If a claimant fails to submit a written claim in accordance with subsection (b)(1) of this section, on motion by a claimant and for good cause shown, the court may entertain an action under this subtitle unless the State can affirmatively show that its defense has been prejudiced by the claimant's failure to submit the claim.

---

[13] Statutory immunity under the MTCA is distinct from Maryland's common law doctrine of public official immunity, which "is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee*, 384 Md. at 258, 863 A.2d at 305.

> (2) Subsection (b)(1) and (2) of this section does not apply if, within 1 year after the injury to person or property that is the basis of the claim, the State has actual or constructive notice of:
> > (i) the claimant's injury; or
> > (ii) the defect or circumstances giving rise to the claimant's injury.

In general, filing a notice of claim with the State Treasurer is a "condition precedent to bringing an action under the MTCA." *Gray*, 228 F. Supp. 2d at 641. The notice requirement is intended to "afford[ ] the State the opportunity to investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." *Haupt v. State*, 340 Md. 462, 470, 667 A.2d 179, 183 (1995). "In the absence of statutory authority to excuse the late filing" of a notice, claims under the MTCA against the State and its officials "must fail." *Simpson v. Moore*, 323 Md. 215, 228–29, 592 A.2d 1090, 1096 (1991); *see also McDaniel v. Maryland*, RDB-10-00189, 2010 WL 3260007, at *4 (D. Md. Aug. 18, 2010); *Ferguson v. Loder*, 186 Md. App. 707, 728, 975 A.2d 284, 296 (2009).

It is undisputed that Francis did not submit a written claim to the State Treasurer or the Treasurer's designee within one year of the Incident, which occurred on January 19, 2019, and the Incident forms the basis of his claims. In fact, the Supervisory Defendants contend (ECF 60 at 26–27), and Francis does not dispute (*see* ECF 64), that he has, as yet, failed to submit a written claim at all.[14] But, Francis contends that "there was 'substantial compliance' sufficient to satisfy the notice provision." ECF 64 at 16. I am unpersuaded.

---

[14] Although Francis does not raise it in his argument, the Supervisory Defendants attached an affidavit of Joyce Miller, the Director of Insurance of the Insurance Division in the State Treasurer's Office, stating that Francis did serve a copy of his State court complaint on the Treasurer's office by email on March 4, 2022, over three years after the Incident. ECF 60-5 at 2. But, the Court cannot consider this at the motion to dismiss stage. And, even if I were able to consider the filing, it would not alter my conclusion that Francis has failed to substantially comply with the statute, unless "substantial compliance" lacks all meaning.

### a. Prejudice

As an initial matter, Francis appears to confuse "lack of prejudice" with "substantial compliance." He contends that substantial compliance has been satisfied because defendants have not demonstrated any prejudice resulting from his failure to provide notice. *See* ECF 55 at 4; ECF 64 at 16–17.

However, "substantial compliance requires more than a mere lack of prejudice to the State." *Johnson v. Md. State Police*, 331 Md. 285, 291, 628 A.2d 162, 165 (1993). In *Simpson*, 323 Md. at 218–29, 592 A.2d at 1091–96, the Maryland Court of Appeals held that an action under the MTCA was barred by failure to comply with the notice requirement, notwithstanding that the State suffered no prejudice due to the plaintiff's failure to comply with the requirement. *See also Barbre v. Pope*, 402 Md. 157, 178–79, 935 A.2d 699, 711–12 (2007); *Williams v. Est. of Falby*, No. 1313, Sept. Term 2014, 2016 WL 391612, at *5 (Md. Ct. Spec. App. Feb. 2, 2016) (rejecting plaintiff's contention that substantial compliance was satisfied where the State was not prejudiced by the failure to notify).

In my view, Francis misconstrues the statute's requirement to show prejudice. He argues that S.G. § 12-106(c) "allows the Court to entertain actions even when the notice portion of the MTCA is not complied with unless the State can show that its defense has been prejudiced." ECF 64 at 16. But, this is belied by the statute's plain text. The statute states that "the court may entertain an action under this subtitle," despite a failure to submit a written claim to the Treasurer's Office, "*on a motion by a claimant and for good cause shown*." S.G. § 12-106(c) (emphasis added). Only then does the statute require the State to demonstrate prejudice. Thus, before I even reach the question of prejudice, I must first find that Francis has satisfied the statutory criteria, including a motion that demonstrates good cause.

Notably, Francis has not filed a motion to excuse his failure, pursuant to S.G. § 12-106(c)(1), nor has he attempted to show good cause for his dereliction.  In his Second Amended Complaint, Francis merely states (ECF 53, ¶ 6): "Given his status as an inmate, and having been placed in solitary confinement following the assault, Mr. Francis was unable to comply with sending a letter pursuant to the [MTCA]."  But, as noted, Francis was moved out of isolation several weeks after the Incident (*id.* ¶ 40), and was released from incarceration on March 3, 2021. ECF 55 at 3.  Neither his period in isolation nor his status as an inmate precluded him from sending notice to the Treasurer's Office within one year of the Incident.  But, even assuming that one of these conditions prevented his compliance, he could have attempted to comply with the statute by providing notice as soon as it became practicable.

For these reasons, Francis's contention that the State has failed to show prejudice is unavailing.

### b.  Substantial Compliance

Francis contends that he may proceed because he has substantially complied with the MTCA, and because "the MTCA does not require notice if the State has actual or constructive notice" of the incident that gave rise to the injury.  ECF 55 at 4; ECF 64 at 16.  He argues that the State had actual notice, or at least constructive notice, of the Incident because the State launched a criminal investigation against Fleegle based on his conduct.  ECF 64 at 17.  Francis argues that this constitutes substantial compliance "sufficient to satisfy this notice provision."  *Id.* at 16.

Where applicable, "notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action."  *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F.

Supp. 2d 599, 603 (D. Md. 2005) (construing Local Government Tort Claims Act) ("LGTCA")).[15]

In *Hansen v. City of Laurel*, 420 Md. 670, 25 A.3d 122 (2011), an LGTCA case, the Maryland

Court of Appeals said: "A plaintiff must not only satisfy the notice requirement strictly or

substantially, but also plead such satisfaction in his/her complaint.  If a plaintiff omits this step, he

or she is subject to a motion to dismiss, for instance, based on a failure to state a claim upon which

relief can be granted." *Id*. at 694, 25 A.3d at 137.

Without question, "strict compliance with the notice provisions of the Local Government

Tort Claims Act is not always required; substantial compliance may suffice." *Renn*, 352 F.Supp.2d

at 603 (internal quotation marks and citations omitted).  Substantial compliance is satisfied

"[w]here the purpose of the notice requirements is fulfilled, but not necessarily in a manner

technically compliant with all of the terms of the statute."  *Id*. (internal quotation marks and

citations omitted).

Prior to 2015, the doctrine of substantial compliance applied only to actions brought under

the LGTCA.  *Royster v. Gahler*, 154 F. Supp. 3d 206, 220–21 (D. Md. 2015), *abrogated on other

grounds by Pense*, 926 F.3d 97.  But, the Maryland General Assembly amended the MTCA in

2015 to permit substantial compliance, consistent with the LGTCA.  *Id*.  The substantial

compliance exception is contained in S.G. § 12–106(c) and is largely similar to that which permits

substantial compliance under the LGTCA.

---

[15] Although the LGTCA and MTCA are not identical, analysis of one statute informs analysis of the other.  Indeed, the Maryland Court of Appeals has drawn comparisons between the LGTCA and MTCA.  *See, e.g.*, *Espina*, 442 Md. at 324, 112 A.2d at 450 (drawing on analysis of the MTCA to find that the LGTCA "appears to encompass constitutional torts"); *Bd. of Educ. of Prince George's Cnty. v. Marks–Sloan*, 428 Md. 1, 29–30, 50 A.3d 1137, 1154–55 (2012) (using both statutes for guidance to interpret Maryland law governing county boards of education); *see also Heron v. Strader*, 361 Md. 258, 263, 761 A.2d 56, 58–59 (2000).

Under Maryland law, substantial compliance entails a "'communication that provides the State requisite and timely notice of facts and circumstances giving rise to the claim.'" *Ferguson v. Loder*, 186 Md. App. at 728, 975 A.2d at 296 (quoting *Candelero v. Cole*, 152 Md. App. 190, 196, 831 A.2d 495, 495 (2003)).   But, the doctrine of substantial compliance is "narrowly construed." *Royster*, 154 F. Supp. 3d at 222 (quoting *McDaniel*, 2010 WL 3260007, at *4).   "The doctrine of substantial compliance . . . is not license to ignore the clear mandate of the MTCA." *Chinwuba v. Larsen*, 142 Md. App. 327, 355, 790 A.2d 83, 98 (2002), *rev'd on other grounds*, 377 Md. 92, 832 A.2d 193 (2003).   In any event, "'[t]he doctrine of substantial compliance has no application to an outright failure to comply. . . .'" *Royster*, 154 F. Supp. 3d at 221 (quoting *Simpson*, 323 Md. at 228, 592 A.2d at 1096).

The Maryland Court of Special Appeals has stated, *Candelero*, 152 Md. App. at 198, 831 A.2d at 499: "If the purpose of the required notice is to permit a timely investigation and the legislature has determined that a timely claim is a claim submitted within one year, a claim that is not received within that time frame is untimely and, in effect, 'an outright failure to comply.'"

Francis did not satisfy the doctrine of substantial compliance because the State's own investigation of the Incident is not a substitute for notice. *Johnson*, 331 Md. at 291–92, 628 A.2d at 164–65, is instructive.

In *Johnson*, the plaintiffs argued that the State had notice of their claims because "the State created several reports of the [automobile] accident," "the State interviewed the plaintiffs immediately after the accident," and "the State unsuccessfully prosecuted [a plaintiff] for an alleged traffic violation." *Id.*   The Maryland Court of Appeals disagreed.   It determined that the doctrine of substantial compliance was not satisfied because "[t]he plaintiffs did not undertake in

any way to provide the State with notice of their claim; they rely solely on the State's own efforts in acquiring information about the incident." *Id.*

The same is true here. To be sure, Fleegle was the subject of a disciplinary action, and Francis relies on the State's criminal investigation of Fleegle to claim that the State had notice of his injury. But, the statute requires that the State have actual or constructive notice of the injury or circumstances giving rise to it "within 1 year after the injury," and Francis provides no indication that the criminal investigation occurred within this time frame. Moreover, I am unaware of any case that concludes that a plaintiff was in substantial compliance with the statute where there was a total failure to provide notice by the plaintiff. *Compare Kelly v. Miller*, ELH-20-2531, 2022 WL 2703827, at *26 (D. Md. July 12, 2022) (finding substantial compliance because, although the plaintiff did not submit a written claim to the Treasurer within one year of the incident, he did so one month after filing suit, just four months after the statutory deadline); *cf. Taylor v. Somerset Cnty. Comm'rs*, RDB-16-0336, 2016 WL 3906641, at *4 (D. Md. July 19, 2016) (finding that the plaintiff did not substantially comply with the MTCA based on her correspondence with the prison warden and Inmate Grievance Office); *see also McDaniel*, 2010 WL 3260007, at *4 (finding that service of the written claim on the Attorney General did not satisfy substantial compliance); *Chinwuba*, 142 Md. App. at 356, 790 A.2d at 99 (same).

The notion that a State agency's awareness of an injury or occurrence satisfies the statutory notice requirement is misguided. The State, of course, functions through its agencies, departments, and their personnel. But, there are numerous agencies with distinct tasks. That the State's police and prosecutors have knowledge of a use of force incident does not impute notice to the State's Treasurer. The police and prosecutors have interests and concerns that differ markedly from those of the Treasurer, who has fiscal concerns.

Indeed, "[n]otice to the Treasurer serves important public purposes." *Chinwuba*, 142 Md. App. at 356, 790 A.2d at 99. It is the Treasurer who "considers the fiscal consequences of the claim, and then decides which of several options to pursue." *Id.* The procedure provides the State with an early opportunity to decide what course to take. *Id.* at 356–57, 790 A.2d at 100; *see also Haupt*, 340 Md. at 470, 667 A.2 at 183; *Leppo v. State Highway Admin.*, 330 Md. 416, 428, 624 A.2d 539, 545 (1993). To conclude otherwise would render superfluous S.G. § 12-106's provision that notice be provided "to the Treasurer or a designee of the Treasurer."

In any event, even if I could consider the State's criminal investigation as sufficient notice as to the claims against Officer Fleegle, that investigation did not, to my knowledge, concern defendants Dovey or Green. Therefore, the investigations could not have provided notice to the State as to the claims brought against Dovey and Green.

Thus, I conclude that Francis did not substantially comply with his statutory duty to provide notice to the Treasurer's Office. And, because Francis did not comply with the MTCA notice requirement, all state constitutional claims (Counts VI, VII, VIII) and tort claims (Counts XI, XII, XIII, XIV, XV[16]) must be dismissed as against the State, as well as against those defendants shielded by statutory immunity, discussed *infra*.

### 3. Statutory Immunity

I next address Francis's contention that his failure to provide notice under the MTCA is not fatal as to his claims against the Individual Defendants because he has sufficiently alleged that

---

[16] Count XV is titled "Respondeat Superior." But, the doctrine of respondeat superior "may not be asserted as a separate cause of action." *McDaniel v. Maryland*, RDB-10-00189, 2010 WL 3260007, at *12 (D. Md. Aug. 18, 2010).

they acted with malice or gross negligence, bringing them outside the scope of statutory immunity. ECF 64 at 16–17.[17]

As noted, the MTCA provides that State personnel are immune from suit for any "tortious act or omission that is within the scope of the public duties of the [official] and is made without malice or gross negligence, and for which the State [has] waived immunity." C.J. § 5-522(b). In that circumstance, the MTCA "substitutes the liability of the State for the liability of the state employee." *Lee*, 384 Md. at 262, 863 A.2d at 307. "And in a precisely complementary provision, the MTCA waives the state's immunity for tort actions brought in state court except where a tortious act or omission by state personnel is outside the scope of their public duties or made with malice or gross negligence." *Marks v. Dann*, 600 F. App'x 81, 85 (4th Cir. 2015) (citing C.J. § 5–522(a)).

"At issue in MTCA cases like this one, in other words, is not whether a person injured by tortious state action . . . will have any remedy, but whether that remedy will lie against a state official in his or her personal capacity or against the state itself." *Marks*, 600 F. App'x at 85. If State personnel defendants are entitled to statutory immunity, any claims against them are instead asserted against the State itself. If, however, the state personnel are not entitled to immunity under the statute, then the State is immune from liability for their conduct.[18]

"[S]tate personnel are not immune from suit and liability in tort when the plaintiff's complaint *sufficiently* alleges malice or gross negligence." *Barbre*, 402 Md. at 181–82, 935 A.2d at 714 (emphasis in original). Thus, compliance with the MTCA's notice requirement is not

---

[17] Francis did not raise this argument in his response to Fleegle's Motion. Nonetheless, I will analyze the argument, as it applies to Fleegle's Motion.

[18] And, as noted, this applies equally to violations of the Maryland Constitution. *See Lee*, 384 Md. at 266, 863 A.2d at 310.

necessary in a suit against individual State personnel in which it is sufficiently alleged that the defendants acted with malice or gross negligence. *Id.*; *see also, e.g.*, *Taylor*, 2016 WL 3906641, at *5. Indeed, "[t]he MTCA's requirements have no effect . . . on a plaintiff's claims against individual state employees." *Canter v. Schoppert*, GJH-16-2545, 2020 WL 1150774, at *9 (D. Md. Mar. 6, 2020).

But, to "get past" a state official's immunity defense, a plaintiff "must point to specific facts that raise an inference that [the official's] actions were improperly motivated." *Nero v. Mosby*, 890 F.3d 106, 128 (4th Cir. 2018). Even at the motion to dismiss stage, "'the plaintiff must allege with some clarity and precision those facts which make the act malicious.'" *Manders v. Brown*, 101 Md. App. 191, 216, 643 A.2d 931, 943 (1994) (quoting *Elliot v. Kupferman*, 58 Md. App. 510, 526, 473 A.2d 960, 969 (1984)).

Therefore, I shall assess whether the Second Amended Complaint sufficiently alleges malice or gross negligence as to each of the Individual Defendants in order to determine if the claims may be brought against them personally, or if instead the claims must be brought against the State. As discussed, if the Individual Defendants are shielded by statutory immunity, the claims must instead be lodged against the State. And, for the reasons stated earlier, such claims would fail for lack of compliance with the MTCA's notice requirement.

For purposes of MTCA immunity, "malice" refers to so-called "actual malice," *i.e.*, "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee*, 384 Md. at 268, 863 A.2d at 311 (citation omitted). "To establish malice, a plaintiff must show that the government official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the

purpose being to deliberately and willfully injure the plaintiff.'" *Nero*, 890 F.3d at 127 (quoting *Bord v. Balt. Cnty.*, 220 Md. App. 529, 557, 104 A.3d 948, 964 (2014)).

Gross negligence means "'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.'" *Newell*, 407 Md. at 638, 967 A.2d at 764 (citation and internal footnote omitted); *see also Cooper*, 443 Md. at 686, 118 A.3d at 832–33. Put another way, an act is the product of gross negligence when it is committed by one who is "'utterly indifferent to the rights of others [such] that he acts as if such rights did not exist.'" *Newell*, 407 Md. at 638, 967 A.2d at 764–65 (citation omitted).

The Maryland Court of Appeals "has recognized consistently that the determination of whether a State actor enjoys State personnel immunity is a question for the trier of fact." *Newell*, 407 Md. at 636, 976 A.2d at 763; *see Cooper*, 443 Md. at 709, 118 A.3d at 846; *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 384 Md. 213, 229, 862 A.2d 1026, 1034 (2004) (citation and internal quotation marks omitted) ("Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence."); *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12, 14 (1968) (citations omitted) ("Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case" and "is usually a question for the jury and is a question of law only when reasonable [people] could not differ as to the rational conclusion to be reached.").

In sum, as "state personnel," the Individual Defendants are entitled to statutory immunity for any alleged tortious acts or omissions committed within the scope of their public duties, absent malice or gross negligence. *See* C.J. § 5-522(b); *see also* S.G. § 12-101 (defining "state personnel" to include State employees paid by the Office of the Comptroller); *see also Cooper*, 443 Md. at

727,118 A.3d at 857 ("[A] correctional officer employed by the Division of Correction of the Maryland DPSCS[] is a State employee for purposes of the MTCA and also a public official for purposes of common law public official immunity.").[19]  With this framework in mind, I turn to review the allegations against the Individual Defendants.

### a.   Officer Fleegle

At the Rule 12(b)(6) stage, Francis has sufficiently alleged malice or gross negligence as to defendant Fleegle.

The facts alleged in the Second Amended Complaint easily fall within the definitions of malice or gross negligence, as discussed above.  Fleegle is accused of intentional and unprovoked violence against Francis and subsequently attempting to coerce him not to report the Incident. ECF 53, ¶¶ 13–38.  And, the Second Amended Complaint lodges a "Gross Negligence" claim against Fleegle.  *Id.* ¶¶ 229–40.  Indeed, the Supervisory Defendants assert that "the conclusion is inescapable that [Fleegle's actions] were actions performed with malice or gross negligence." ECF 67 at 15.  Thus, at this juncture, Officer Fleegle is not entitled to immunity from liability pursuant to the statute.  Plaintiff may proceed as to Fleegle, despite his failure to comply with the notice requirements.  *See Barbre*, 402 Md. at 181–82, 935 A.2d at 714.

As to specific claims lodged against Fleegle, Fleegle's Motion asserts arguments in opposition only to Francis's claims for intentional infliction of emotional distress and battery.

### i.   Battery

In the Second Amended Complaint, Francis asserts a charge of battery against Fleegle, pursuant to State tort law.  ECF 53, ¶¶ 192–200.  Fleegle opposes this claim on the ground that

---

[19] There has been no reason presented why the Individual Defendants are not State employees or should not qualify as "state personnel."

Maryland law "provides for a one-year statute of limitations for assault claims."  ECF 54 at 8.[20]

Curiously, in response, Francis concedes that the Court should dismiss the claim for battery, which

is asserted as Count X.  ECF 55 at 1.

It is not necessarily sufficient for plaintiff to consent to dismissal in a responsive pleading.

As with motions to amend a complaint to *add* claims, Fed. R. Civ. P. 15 governs a plaintiff's

request to *eliminate* some, but not all, of the claims asserted in an action.  *See Wallace v. Mercantile*

*Cnty. Bank*, 514 F. Supp. 2d 776, 788–89 (D. Md. 2007), *aff'd*, 307 F. App'x 720 (4th Cir. 2009)

(applying Rule 15).  And, Francis did not file a Rule 15 motion to amend his suit.

Although Francis does not oppose the dismissal, his concession appears to be based on

misapprehension of the law.

As Fleegle recognizes (ECF 54 at 8), an action for *assault* is subject to a one-year statute

of limitations, pursuant to C.J. § 5-105.  But, this provision does not apply to claims for *battery*.

Indeed, the Maryland Court of Special Appeals has explained, *Ford v. Douglas*, 144 Md. App.

620, 623–25, 799 A.2d 448, 450–51 (2002) (emphasis added):

> Prior to 1989, CJ section 5-105 expressly applied to assault, battery, libel,
> and slander.  Effective July 1, 1989, Senate Bill 418 was enacted as chapter 488,
> Laws of Maryland 1989.  Chapter 488 amended section 5-105 to delete battery,
> thereby  *making battery subject to the general statute of limitations*.   .   .   .
> The statute of limitations for battery was changed because of the recognition that
> criminal cases were frequently not concluded within one year, and thus, it
> was impractical to have the one-year statute of limitations for civil actions. *The*
> *legislature distinguished between assault and battery and determined to change the*
> *statute only in the case of battery.*

Therefore, claims for battery are subject to the "general statute of limitations," *id.*, which

is found in C.J. § 5-101.  And, this statute states, *id.* (emphasis added): "A civil action at law shall

---

[20] Officer Fleegle cites to Maryland law as it existed in 2006.  But, I will use the most
updated text of the law for accuracy.

be filed within *three years* from the date it accrues." Because the Incident occurred on January 19, 2019, and this action was filed on June 2, 2021, less than three years after the Incident, Francis's claim for battery is not barred by the applicable statute of limitations. This conclusion is not changed by the fact that the suit has been twice amended because the battery claim was asserted in the Original Complaint (ECF 1), the First Amended Complaint (ECF 22), and the Second Amended Complaint (ECF 53). *See United States ex rel. Carter v. Halliburton Co.*, 315 F.R.D. 56, 63 (E.D. Va. 2016), *aff'd*, F.3d 199 (4th Cir. 2017). Therefore, I shall deny Fleegle's motion as to the battery claim.

### ii.    Intentional Infliction of Emotional Distress

Fleegle urges the Court to dismiss the IIED claim because he argues that his "alleged conduct fails to meet the definition of 'extreme and outrageous'" and because Francis's "alleged emotional distresses do not reach the requisite level of severity" required to maintain an IIED claim. ECF 54 at 9, 11  I disagree.

When a plaintiff alleges that a defendant committed IIED under Maryland law, the plaintiff must demonstrate that: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367, 758 A.2d 95, 113 (2000) (citation omitted); *accord, e.g.*, *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977); *Caldor, Inc. v. Bowden*, 330 Md. 632, 641–42, 625 A.2d 959, 963 (1993); *Mixter v. Farmer*, 215 Md. App. 536, 547–48, 81 A.3d 631, 637 (2013); *Lasater v. Guttmann*, 194 Md. App. 431, 448, 5 A.3d 79, 89 (2010).

To succeed on an IIED claim, a defendant's conduct must be "'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable

in a civilized community.'" *Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 850 (D. Md. 2015) (quoting *Harris*, 281 Md. at 567, 380 A.2d at 614).  Indeed, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59–60, 502 A.2d 1057, 1064, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986)).

To be sure, claims for IIED are generally disfavored, difficult to establish, and, as such, "rarely viable" under Maryland law.  *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011); *see Arsham*, 85 F. Supp. 3d at 850; *Manikhi*, 360 Md. at 369, 758 A.2d at 114; *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514, 665 A.2d 297, 319 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996); *see also* David Crump, *Rethinking Intentional Infliction of Emotional Distress*, 25 GEO. MASON L. REV. 287, 297 (2018) (noting that an IIED claim is "a kind of vituperative epithet" that "adds little that can be the subject of a separate or additional recovery" but "makes [the litigation] more expensive").  Indeed, since the Maryland Court of Appeals first recognized the tort of IIED in 1977, *Harris*, 281 Md. 560, 380 A.2d 611, it has repeatedly advised that "recovery" for IIED "will be meted out sparingly."  *Hamilton*, 66 Md. App. at 61, 502 A.2d at 1065; *see Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992); *Caldor, Inc.*, 330 Md. at 642, 625 A.2d at 963.

However, "the extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person which gives him actual or apparent authority over him, or power to affect his interests."  *Harris*, 281 Md. at 569, 380 A.2d 611 (quoting *Restatement (Second) of Torts* § 46, comment e (1965)).  "Following this principle, the *Harris* Court stated that '[i]n cases where the defendant is in a peculiar position to harass the

plaintiff, and cause emotional distress, his conduct will be carefully scrutinized by the courts.'" *Borchers v. Hyrchuk*, 126 Md. App. 10, 19, 727 A.2d 388, 392–93 (1999) (quoting *Harris*, 281 Md. at 569, 380 A.2d at 616)); *see also Washington v. Maynard*, GLR-13-3767, 2016 WL 865359, at *11 (D. Md. Mar. 7, 2016) ("Because they exercise dominion over virtually every aspect of an inmate's daily life in prison, corrections officers and their supervisors have the utmost power to affect the interests of inmates.")

Despite the high bar for recovery for IIED claims, Francis adequately alleges the elements of the tort. The Second Amended Complaint details a violent and unprompted assault of plaintiff by Fleegle, a correctional officer, during which Fleegle choked plaintiff (ECF 53, ¶ 26); struck him in the head (*id.* ¶ 32); and threatened to kill him (*id.* ¶ 33). Further, plaintiff alleges that, as a result, he "suffered severe pain, contusions and lacerations, along with other injuries" (*id.* ¶ 37) and "continues to receive mental health treatment for posttraumatic stress disorder." *Id.* ¶ 41.

In my view, Francis has sufficiently alleged extreme and outrageous conduct, as well as severe emotional distress. Accordingly, I shall deny Fleegle's Motion as to the IIED claim.

### b. Warden Dovey and Secretary Green

### i. Policies and Practices

Francis asserts that "[t]he conduct of . . . Dovey and Green [was] intentional, malicious, wil[l]ful and reckless." ECF 53, ¶ 202. But, he does not clarify the conduct to which he refers. I will assume that he makes reference to the allegations that MCTC officials "fostered and encouraged an environment of vigilante justice." *Id.* ¶ 58. In any event, Francis fails to provide any facts from which I can glean specific actions taken by Dovey or Green.

Indeed, the generic allegations contained in the Second Amended Complaint do not provide the sort of "clarity and precision" required by the MTCA. *Elliot*, 58 Md. App. at 526, 473 A.2d at

969; *see, e.g.*, ECF 53, ¶¶ 206, 208, 218, 219 ("CO Fleegle was acting on orders, directly or indirectly, from . . . Defendants Dovey and Green;" "Defendants Fleegle, Green and Dovey agreed that the corrections officers would . . . deprive the rights of Mr. Francis;" "Defendants Dovey and Green ignored, and at times, encouraged CO Fleegle to behave in this manner;" "Defendants Dovey and Green ignored the lawless and ruthless environment maintained in the MCTC.").

As mentioned, to overcome statutory immunity, a plaintiff "must point to *specific facts* that raise an inference that [the official's] actions were improperly motivated," *Nero*, 890 F.3d at 128 (emphasis added), and the "facts which make the act malicious" must be alleged "with some clarity and precision," *Elliot*, 58 Md. App. at 526, 473 A.2d at 969. Moreover, "defendants are not fungible; [the Court] must examine what each is charged with doing or failing to do." *Wells v. State*, 100 Md. App. 693, 703, 642 A.2d 879, 884 (1994). Put another way, as to each defendant, a plaintiff "must have pled *facts* showing that [a defendant] acted with a wanton and reckless disregard for others" for the challenged conduct. *Boyer v. State*, 323 Md. 558, 579, 594 A.2d 121, 132 (1991) (emphasis in original). Thus, a plaintiff must assert facts to support a contention, and "somewhat vague allegations" do not support a conclusion that a defendant acted with gross negligence. *Id.*

The allegations against Dovey and Green are also based on their alleged policies, customs, and practices or their failure to enact certain policies. In ECF 53, Francis describes the policies, in part, as follows:

> 46. According to its policy, DPSCS regularly punishes inmates by placing them in solitary confinement – also known as "lockdown" or "isolation" or "segregation" – isolating the inmate ad only allowing inmates out of their cells for one hour or less each day.
>
> *     *     *
>
> 56. Inside MCTC and across DPSCS facilities, there are policies of withholding [Administrative Remedies Procedure forms] from inmates in an effort to preclude inmates from making complaints.

* * *

59. Warden Dovey and Secretary Green have implemented policies that fail to adequately address correctional officer assaults on inmates. Part of their policy includes intentionally concealing assaults and/or strongly encouraging inmates not to report assaults.

60. Those policies also include sending inmate assault complaints through a corrupt process in which the assault, no matter how egregious, will almost certainly be found to have been justified.

61. Those policies also include coercing inmates to drop complaints in exchange for additional recreation time or "good time" or additional food or other benefits.

62. Because of Defendants Dovey and Green's policy, many correctional officer assaults on inmates go unreported.

* * *

64. Those policies encourage corrections officers to assault inmates as it did here when CO Fleegle assaulted Mr. Francis.

* * *

67. Warden Dovey, Secretary Green and the DPSCS were responsible for promulgating and implementing and following policies and procedures pertinent to the MCTC and specifically, and not limited to, the safety and well-being of inmates such as Mr. Francis.

* * *

172. Defendants Green and Dovey enacted and/or perpetuated a policy, practice and/or custom that encouraged this behavior by the CO Fleegle. Defendants Green and Dovey have done so through explicit and implicit instruction to the CO Fleegle and other correction officers or have acquired knowledge of such a policy, practice and/or custom and have not prevented its exercise.

Despite these references, Francis has not specified which of these two officials implemented any "policy, practice, and/or custom," if either, nor has he attributed the alleged action or inaction to either of the defendants. Nor is there any indication that either defendant had any personal involvement in the implementation of these policies or if they are DPSCS-wide policies.

Claims cannot be generic. Yet, Francis states that Dovey and Green *either* enacted a policy, *or* perpetuated it, *or* acquired knowledge and have not prevented its exercise. *See id.* ¶ 172. And, as the Supervisory Defendants acknowledge (ECF 67 at 9–10), the "corrupt process" described in ECF 53, ¶ 60 refers to the Administrative Remedies Procedure, which "is not the creation of former Warden Dovey or of Secretary Green, but of the [Maryland State] Legislature."

Francis also does not clarify the policy, practice, or custom to which he refers for his claims for relief. *See, e.g.*, *id.* ¶ 172 (stating in Count VIII that "Defendants Green and Dovey enacted and/or perpetuated a policy, practice and/or custom that encouraged this behavior by the CO Fleegle," but failing to indicate any specific policy, practice, or custom specifically violated his free speech rights); *id.* ¶ 183 (stating in Count IX that "Defendants Dovey and Green and their predecessors were, at all times relevant, policymakers for the State of Maryland and the DPSCS, and in that capacity established policies, procedures, customs, and/or practices for the State of Maryland," but failing to pinpoint the policy, practice, or custom alleged to demonstrate deliberate indifference).

Similarly, although Francis alleges that Dovey and Green "encouraged this behavior by the CO Fleegle," (ECF 53, ¶ 172), the Second Amended Complaint does not allege how the "explicit and implicit instruction" was communicated to corrections officers or how and when the officials acquired a knowledge of the "policy, practice, and/or custom." *Id.* Further, in plaintiff's response to the Motion, he states only that his pleading adequately alleges malice or gross negligence because "the alleged conduct of CO Fleegle falls within the practice and customs established by the Supervisory Defendants." ECF 64 at 18–19. But, Francis merely advances a conclusory allegation; the Second Amended Complaint is devoid of *facts* that, if proved, would amount to the deliberate implementation of an unlawful policy or purposely ignoring a policy that violates State law.

In addition, Francis asserts: "The Supervisory Defendants can be held liable [for] CO Fleegle's misconduct, despite the ostensible antithetical nature of his conduct given the practices and customs facilitated by Warden Dovey and Secretary Green." ECF 64 at 19. He cites to *Torbit v. Balt. City Police Dep't*, 231 Md. App. 573, 586, 153 A.3d 847, 854 (2017), for the argument

that "intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence." ECF 64 at 19. Francis provides no further argument or explanation. But, I assume that he claims that the Supervisory Defendants are liable for Francis's injuries because Fleegle's conduct was foreseeable due to MCTC policies and customs.

As I see it, *Torbit*, which is the only authority cited by Francis, contradicts the exact point he is attempting to argue. The suit in *Torbit*, 231 Md. App. at 579, 153 A.3d at 850, arose after two people were killed and several were injured when the Baltimore Police Department responded to an "active shooter" situation outside a nightclub. Nightclub patrons sued the nightclub, among others, for their injuries, and the trial court granted summary judgment in favor of the nightclub, finding that the police shooting was not foreseeable. *Id.* at 585–86, 153 A.2d at 853. The patrons appealed, arguing that the nightclub's "knowledge of criminal activity in the neighborhood, over-promotion, allowance of overcrowding, and lack of security created a dangerous condition," and that condition was the proximate cause of the police shooting. *Id.* at 585, 153 A.2d at 853.

The Maryland Court of Special Appeals affirmed the trial court. The court determined that, even if the nightclub acted as alleged, "it could not foresee that . . . a plainclothes BPD officer . . . would fire his weapon in a nearby parking lot." *Id.* Because that conduct was unforeseeable, the court concluded that the officer's act of firing his weapon was "an intervening force and superseding cause." *Id.*

Here, Francis seems to contend that Fleegle's misconduct *was* foreseeable, and therefore could not be viewed as an intervening force and superseding cause. However, *Torbit* would support the opposite—that, even if the policies and customs at MCTC "fostered and encouraged an environment of vigilante justice" (ECF 53, ¶ 58), and that was the proximate cause of Fleegle's conduct, Fleegle's violent outburst was an intervening force in Francis's injuries. This is because

Fleegle's outburst "broke the causal link between any action by" defendants and plaintiff's injuries. *Torbit*, 231 Md. App. at 586, 153 A.3d at 854. As a result, I am unable to find gross negligence or malice on this ground.

Of import, there is no indication in the Second Amended Complaint that the alleged policies, practices, and/or customs impacted Francis as alleged. Although he states that inmate assault complaints are sent through "a corrupt process in which the assault, no matter how egregious, will almost certainly be found to have been justified" and inmates are coerced "to drop complaints," there is no indication that Francis was deterred from successfully filing an inmate assault complaint nor that he was coerced to drop a complaint.[21] Francis also failed to present any specific facts to support his allegation that, in general, inmates are deterred from reporting or that complaints of assault will be found justified, regardless of the situation. The Second Amended Complaint is devoid of reference to any in which these alleged events occurred.

In my view, the Second Amended Complaint does not "sufficiently allege" malice or gross negligence as to Dovey or Green. *Barbre*, 402 Md. at 181–82, 935 A.2d at 714. It is devoid of facts to support a claim that the Supervisory Defendants personally acted with malice or gross negligence. Indeed, the Second Amended Complaint contains no allegations of specific conduct engaged in by Dovey or Green. Rather, it includes only a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 555.

What the Maryland Court of Appeals stated in *Wells*, 100 Md. App. at 705–06, 642 A.2d at 885, is apt here. Even if the allegations, taken in the light most favorable to plaintiff, "suggest individual negligence and bureaucratic mismanagement and incompetence" or suggest "a critically

---

[21] Indeed, the Supervisory Defendants' assert (ECF 67 at 8–10) that Francis successfully complained about the Incident and that Fleegle's conduct was *not* "found to have been justified." ECF 53, ¶ 60.

important governmental unit not properly doing its job because of underfunding, understaffing, lack of effective leadership and supervision, lack of training, and lack of clear procedures and protocols," that is not sufficient to indicate "malice, evil intention, or wanton, wilful, or reckless disregard for human life or the rights of others." *Id.* Thus, the Second Amended Complaint does not sufficiently allege gross negligence or malice on the part of either Dovey or Green.

### ii. Failure to Train

Francis charges Dovey and Green with "Negligent Hiring, Training, Retention, and Supervision." ECF 53, ¶¶ 212–28; *see also id.* ¶¶ 44, 49, 54. This claim suffers from the same deficiencies described above.

"To state a claim for negligent hiring, training, or supervision, a plaintiff must show: '(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries.'" *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022) (alteration in *Karns*) (quoting *Jarvis v. Securitas Sec. Servs. USA, Inc.*, 11-CV-00654-AW, 2012 WL 527597, at *5 (D. Md. Feb. 16, 2012), *aff'd sub nom. Jarvis v. Contractor Securitas Sec.*, 474 F. App'x 271 (4th Cir. 2012)).

In doing so, a plaintiff cannot rely on "little more than conclusory allegations and generalizations." *Jarvis*, 2012 WL 527597, at *5. Rather, the plaintiff must provide a factual basis to support a claim that a defendant "had 'actual or constructive knowledge' of the 'conduct or general character'" of its employee. *Id.* (quoting *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996)). If the plaintiff alleges "no facts indicating that Defendant had or should have had knowledge of its [employee's] general character or prior

conduct that would require Defendant to take action," the claim for negligent training and supervision "fails as a matter of law." *Id.*

In this case, Francis asserts only conclusory allegations to support his claim. He presents no facts as to what training Fleegle underwent, how or why it was deficient, how Dovey and/or Green knew or should have known of Fleegle's tendency toward violence, or any instances in which Fleegle's violent conduct was condoned or ignored. *See* ECF 53, ¶¶ 212–28. Thus, Francis's claim fails as a matter of law. *See Jarvis*, 2012 WL 527597, at *6 (dismissing negligent supervision and hiring claims because "Plaintiff alleges that Defendant was 'unfit and incompetent' but does not give a factual basis as to why"). Thus, he has not sufficiently pleaded malice or gross negligence as required to overcome statutory immunity.

### iii.

In my view, Francis failed sufficiently to plead malice or gross negligence as to Warden Dovey and Secretary Green. Therefore, they are immune from suit for the State constitutional and tort claims brought against them. This, in conjunction with plaintiff's failure to provide the requisite notice, is fatal to the State law claims as to them. Therefore, I shall dismiss the State constitutional claims (Counts VI, VII, VIII, VIX) and tort claims (Counts XI, XII, XIII) as against Dovey and Green.

## IV.    Conclusion

In sum, Francis's case may proceed as against Officer Fleegle in his individual capacity but may not proceed as against the Supervisory Defendants. The State and its officials, which include all of the Individual Defendants in their official capacities, are entitled to sovereign immunity with regard to the claims under 42 U.S.C. § 1983. The Second Amended Complaint

also fails to state a claim as against the Supervisory Defendants under federal law, in large part due to the lack of allegations as to their personal involvement in the Incident.

Additionally, as a result of plaintiff's failure to comply with the MTCA's notice requirement, Francis has no colorable claim against the State, nor does he sufficiently allege the malice or gross negligence by Green or Dovey necessary to overcome the MTCA's statutory immunity for State personnel.  In contrast, the Second Amended Complaint does sufficiently allege malice or gross negligence as to Fleegle, placing him outside the scope of the MTCA's immunity provision.

For the foregoing reasons, I shall deny Fleegle's Motion (ECF 54) and grant the Supervisory Defendants' Motion (ECF 60).

An Order follows, consistent with this Memorandum Opinion.


Date:  February 24, 2023                  _____/s/_____
                                          Ellen L. Hollander
                                          United States District Judge