IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY FRANCIS,

  *Plaintiff*,

v.

STATE OF MARYLAND, *et al.*,

  *Defendants*.

Civil Action No. ELH-21-1365

**MEMORANDUM OPINION**

Plaintiff Jeffrey Francis, a former inmate at the Maryland Correctional Training Center ("MCTC"), filed a civil rights suit, through counsel, pursuant to 42 U.S.C. § 1983 and Maryland law.  *See* ECF 1 (the "Complaint").  The suit stems from a use of force incident at MCTC on January 19, 2019, involving defendant Robert Fleegle, an MCTC correctional officer (the "Incident").[1]  The Complaint has been amended three times.  *See* ECF 22 (the "First Amended Complaint"); ECF 53 (the "Second Amended Complaint"); ECF 76 (the "Third Amended Complaint").  The Third Amended Complaint is at issue.

Francis has sued four defendants: Correctional Officer ("C.O.") Robert Fleegle; Richard Dovey, the former Warden of MCTC; Robert L. Green, the former Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"); and the State of Maryland (the "State").  I shall sometimes refer to Fleegle, Dovey, and Green collectively as the "Individual Defendants," and I shall sometimes refer to Dovey and Green collectively as the "Supervisory Defendants."  The Individual Defendants were sued in their personal and official capacities.  *Id.* ¶¶ 9–11.

---

[1] Plaintiff was released from incarceration on March 2, 2021.  ECF 78-1 at 16.

The Third Amended Complaint contains fifteen claims, including claims that the Court previously dismissed with prejudice, and as to defendants who were dismissed from the case.[2] Counts 1 through 4, lodged against the Individual Defendants, assert violations of the Constitution, as follows: "Excessive Force," in violation of the Fourth Amendment (Count 1); "Cruel and Unusual Punishment," in violation of the Eighth Amendment (Count 2); violation of the right to Due Process under the Fourteenth Amendment (Count 3); and violation of the right to "Freedom of Speech" under the First Amendment (Count 4). Count 5, lodged against the State, asserts a "*Monell* Claim," premised on *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (Count 5). ECF 76, ¶¶ 90–157.

In addition, Counts 6, 7, and 8 allege violations of the Maryland Declaration of Rights, lodged against all defendants, as follows: "Excessive Force," in violation of Article 24 (Count 6); "Cruel and Unusual Punishment," in violation of Articles 16 and 25 (Count 7); and violation of the right to "Free Speech," in violation of Article 40 (Count 8). *Id.* ¶¶ 158–97. Count 9, brought against Dovey and Green, asserts "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision," in violation of Article 40 of the Maryland Declaration of Rights and the Eighth and Fourteenth Amendments to the Constitution. *Id.* ¶¶ 198–211.

Plaintiff also alleges several State tort claims, as follows: Battery, against Fleegle (Count 10); Intentional Infliction of Emotional Distress, against the Individual Defendants (Count 11); Conspiracy, against the Individual Defendants (Count 12); Negligent Hiring, Training, Retention,

---

[2] Plaintiff refers to each claim as a "Claim for Relief." However, for convenience, I shall refer to each "Claim" as a "Count," and I have numbered the counts. In earlier rulings, I used Roman numerals to number the counts. Here, I shall use Arabic numerals.

and Supervision, against the Supervisory Defendants (Count 13); Gross Negligence, against Fleegle (Count 14); and Respondeat Superior, against the State (Count 15).[3]  *Id.* ¶¶ 212–65.

In an Amended Memorandum Opinion (ECF 75) and Order (ECF 74) issued with respect to the Second Amended Complaint (ECF 53), I dismissed Counts 1, 2, 3, and 4 against Fleegle in his official capacity, with prejudice, but otherwise denied the motion to dismiss as to him.  As to Green and Dovey, I dismissed Counts 1, 2, 3, and 4, with prejudice.  And, I dismissed Counts 6, 7, 8, 9, 11, 12, and 13, without prejudice, and with leave to amend.  Further, I dismissed all claims against the State (Counts 5, 6, 7, 8, 13, and 15), with prejudice.[4]

The Third Amended Complaint followed.  As noted, it includes claims that were previously dismissed, with prejudice.  But, it adds several new paragraphs to the "Statement of Facts."  *See* ECF 76, ¶¶ 69–88.

The State and the Supervisory Defendants have filed a "Motion to Dismiss Third Amended Complaint, or in the Alternative, for Summary Judgment," pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.  ECF 78.  It is supported by a memorandum (ECF 78-1) (collectively, the "Motion") and four exhibits (ECF 78-2 to ECF 78-5).  The State and the Supervisory Defendants also incorporate by reference their earlier motion to dismiss the Second Amended Complaint (ECF 60).  *See* ECF 78-1 at 19.[5]

---

[3] In *McDaniel v. Maryland*, RDB-10-00189, 2010 WL 3260007, at *12 (D. Md. Aug. 18, 2010), Judge Bennett said that the doctrine of respondeat superior "may not be asserted as a separate cause of action."

[4] Counts 10 (Battery) and 14 (Gross Negligence) are asserted only against Fleegle.  I previously denied Fleegle's motion to dismiss those claims, and they are not at issue here.

[5] Throughout this Memorandum Opinion, I cite to the electronic pagination, which does not always correspond to the page number imprinted on a particular submission.

Francis opposes the Motion.  ECF 80 (the "Opposition").  However, in his Opposition, Francis does not address Counts 1 through 5, explaining that he does not "intend[] to revisit the Court's earlier ruling." *Id.* at 1.  Further, Francis notes that he "does not offer a counterargument" as to Counts 11, 12, and 13.  *Id.*  He posits that "the question is whether the facts as amended in the Third Amended Complaint are sufficient to state a claim upon which relief can be granted" as to Counts 6, 7, 8, and 9.  *Id.* at 2.

The Supervisory Defendants and the State have replied.  ECF 83 (the "Reply").  They assert: "The Parties agree that 'the question is whether the facts as amended in the Third Amended Complaint are sufficient to state a claim upon which relief can be granted'" as to Counts 6, 7, 8, and 9.  *Id.* at 2 (quoting ECF 80 at 2).

As to Counts 1 through 5, 11, 12, 13, and 15, I rely on my analysis in the Amended Memorandum Opinion of March 10, 2023.  *See* ECF 75.[6]  In effect, only Counts 6, 7, 8, and 9 are at issue here.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.      Factual and Procedural Background[7]

### A.  Procedural Background

The Supervisory Defendants and the State moved to dismiss the Complaint (ECF 1) or, in the alternative, for summary judgment.  ECF 17.  Thereafter, on September 16, 2021, Francis filed the First Amended Complaint.  ECF 22.  Defendants moved to dismiss or, in the alternative, for

---

[6] Counts 10 and 14 are asserted solely against Fleegle and are not at issue here.

[7] I restate the factual summary set forth in ECF 75, and I shall supplement it with the new allegations.  As discussed, *infra*, given the posture of the case, I must assume the truth of plaintiff's factual allegations.

summary judgment.  ECF 27 (Dovey, Green)[8]; ECF 39 (Fleegle).  By Memorandum (ECF 44) and Order (ECF 45) of December 2, 2021, I concluded that the First Amended Complaint superseded the Complaint, thereby rendering moot the original motion to dismiss (ECF 17).  On that basis, I denied ECF 17.

Then, on January 14, 2022, Francis filed suit in the Circuit Court for Baltimore County against Dovey, Green, and the State (the "State Case"), based on the same Incident, and asserting the same claims for relief as he asserted in the federal case.  Defendants timely removed the State Case to this Court.  *See Francis v. State of Maryland et al.*, ELH-22-806, ECF 1 (Notice of Removal); ECF 2 (State Case Complaint).  The parties subsequently filed a joint motion to consolidate the two cases (ECF 51), which I granted (ECF 52).  In addition, in ECF 52, I granted Francis the opportunity to file a consolidated amended complaint and denied as moot the motions to dismiss the First Amended Complaint (ECF 27, ECF 39).

The Second Amended Complaint (ECF 53) followed on May 20, 2022.[9]  Defendants again moved to dismiss or for summary judgment.  ECF 54 (Fleegle); ECF 60 (State, Dovey, Green). By Memorandum Opinion of February 24, 2023 (ECF 73), as amended on March 10, 2023 (ECF 75), and Order of February 24, 2023 (ECF 74), I dismissed Counts 1, 2, 3, and 4 against Fleegle in his official capacity, with prejudice, but denied the motion as to those counts to the extent that Fleegle was sued in his individual capacity.  I dismissed Counts 1, 2, 3, and 4 against Green and Dovey, with prejudice, and I dismissed Counts 6, 7, 8, 9, 11, 12, and 13 against Green and Dovey,

---

[8] The State was not named as a defendant in the First Amended Complaint.  ECF 22; ECF 22-1 (Redlined version).

[9] As with the Complaint, the State was again named as a defendant.

without prejudice, and with leave to amend.  I also dismissed the claims against the State (Counts 5, 6, 7, 8, 13, and 15), with prejudice.

The Third Amended Complaint (ECF 76) followed.

## B.  The Incident

Francis claims that at about 10:50 p.m. on January 19, 2019, while he was incarcerated at MCTC, Fleegle asked him to come to his desk for reasons unknown to Francis.  ECF 76, ¶¶ 13–15.  At the desk, Fleegle asked Francis for his ID number so that Fleegle could "request phone restrictions for [his] tier."  *Id.* ¶ 16.  In response, Francis asked for the forms needed to request an administrative review of this decision.  *Id.* ¶ 17.  According to Francis, Fleegle then "became irate and began to stand up."  *Id.* ¶ 18.  At that point Francis called to a second correctional officer, *id.* ¶ 21, and "slowly backed up a few feet into a wall, at which point [he] could not back up anymore and was trapped."  *Id.* ¶ 22.

Fleegle "was aggressively pursuing Mr. Francis and eventually was within striking distance."  *Id.* ¶ 23.  Fleegle "began his assault" on Francis by "jabbing his index and middle finger into Mr. Francis's throat," which caused Francis to gag and impaired his ability to breathe.  *Id.* ¶ 24.  Fleegle then "jab[bed] [his] finger into Mr. Francis's eye in an attempt to gouge the eyeball," *id.*, and used his other hand to "grab and squeeze" Francis's face.  *Id.* ¶ 25.  Then, Fleegle wrapped his hands around Francis's neck and choked him until he was unable to breathe.  *Id.* ¶ 26.  Francis notes that he stands at 5'7" and weighed 160 pounds at the time of the Incident, whereas Fleegle is 6'4" and weighed close to 300 pounds.  *Id.* ¶¶ 19, 20.

After Fleegle released plaintiff, Fleegle instructed Francis to "'cuff up,'" "which meant to place his hands behind his back."  *Id.* ¶ 27.  As Francis laid on the ground with his arms "behind his back," Fleegle "took his knee and dropped all of his nearly 300 lbs" into Francis's spine.  *Id.*

Francis maintains that Fleegle handcuffed him "in a way as to intentionally exert maximum pain" on the wrists, possibly causing a bone to break. *Id.* ¶ 28. Another guard appeared and, along with Fleegle, grabbed the handcuff chain with so much force that Francis's "shoes came off" and "his arms were brought up to [his] head." *Id.* ¶ 29. Francis alleges that he was then dragged to the corrections officers' break room in this position and thrown face-first to the floor, *id.*, where he laid "crying, wincing in pain and begging loudly for help." *Id.* ¶ 30.

According to Francis, the other guard left him in the room with Fleegle, who began to strike Francis on the head "with either a shod foot or a fist or another object," *id.* ¶ 32, and threatened to kill him. *Id.* ¶ 33. Francis recalls that at this point, another corrections officer came into the room and Fleegle told the officer that he (Fleegle) "had just snapped." *Id.* ¶ 34. Fleegle instructed Francis to clean the blood and tears from his face, *id.* ¶ 35, gave him a bottle of water and ibuprofen, *id.* ¶ 36, and advised Francis that if he wanted medical attention, he would "have to say that he was injured from falling." *Id.* Francis claims that he was then placed in solitary confinement for several weeks. *Id.* ¶ 40.[10] He was subsequently transferred to Roxbury Correctional Institution. ECF 78-1 at 16.

As a result of the Incident, Francis states that he "suffered injuries to his wrist, head and throat" (ECF 76, ¶ 37), and "suffered severe pain, contusions and lacerations, along with other injuries." *Id.* ¶ 39. Francis claims that he "continues to receive mental health treatment for post traumatic stress disorder stemming from" the Incident and his subsequent placement in solitary confinement. *Id.* ¶ 41.

---

[10] The State and the Supervisory Defendants dispute plaintiff's description of his housing. Instead, they characterize his isolation as "administrative segregation," which was implemented "for his protection." ECF 78-1 at 16.

### C.  Investigation, Discipline, and Criminal Charges

According to the State and the Supervisory Defendants, and not disputed by plaintiff, approximately two hours after the occurrence, Francis reported the Incident to another correctional officer, and that officer then informed a supervisor.  ECF 67 at 8.[11]  The corrections officer also sent Francis "to medical to authenticate and photograph his injuries, generated a Serious Incident Report to document the [I]ncident, and informed the Internal Investigative Division of the alleged assault."  *Id.*  Within 24 hours, MCTC initiated an investigation of the Incident through the DPSCS Intelligence Investigative Division ("IID").  *Id.*[12]; *see* ECF 76, ¶ 52 ("An internal affairs investigation was initiated regarding the assault of Mr. Francis.").

The State and the Supervisory Defendants assert that, as a result of the investigation, it was determined that Fleegle used excessive force and violated "numerous standards of Conduct and Internal Administrative Process."  ECF 67 at 9.  Three other MCTC correctional officers were also found to have violated DPSCS Standards of Conduct during the course of the Incident.  *Id.*  Based on this investigation, MCTC initiated Disciplinary Charges against Fleegle.  *Id.*  Moreover, Warden Dovey recommended Fleegle's termination from employment.  *Id.*  But, Fleegle appealed the termination recommendation and ultimately signed a Disciplinary action Settlement Agreement.  *Id.* at n.3.  In lieu of termination, Fleegle served a period of suspension without pay and lost vacation time.  *Id.*

---

[11] ECF 67 is the Supervisory Defendants' reply in connection with their motion to dismiss the Second Amended Complaint.

[12] ECF 67-1 references an excerpt from Exhibit E, the IID Report, filed under seal. However, it is not docketed at ECF 68, despite the reference to it.  And, the Court was not provided with a copy of it.

Additionally, the State brought criminal charges against Fleegle based on the Incident. ECF 76, ¶ 53.  In particular, Fleegle was indicted for first degree assault and second degree assault. However, plaintiff does not specify the date that the charges were filed.  In any event, the State subsequently dropped the charges.[13]

### D.  Policies and Practices of Warden Dovey and Secretary Green

The Third Amended Complaint includes twenty new paragraphs describing the alleged acts and omissions of Dovey and Green.  The allegations, which are quite repetitive, are set forth below.

According to Francis, "DSPCS regularly punishes inmates by placing them in solitary confinement . . . ."  ECF 76, ¶ 46.  Further, "[i]nside MCTC and across DPSCS facilities, there are policies of withholding [Administrative Remedies Procedure ("ARP")] from inmates in an effort to preclude inmates from making complaints."  *Id.* ¶ 56.

Plaintiff asserts that Dovey and Green "have implemented policies that fail to adequately address correctional officer assaults on inmates."  *Id.* ¶ 59.  Among other things, Francis claims that they "intentionally conceal[] assaults and/or strongly encourag[e] inmates not to report assaults."  *Id.*  In addition, their "policies also include sending inmate assault complaints through a corrupt process in which the assault, no matter how egregious, will almost certainly be found to have been justified."  *Id.* ¶ 60.  And, their policies allegedly include "coercing inmates to drop complaints in exchange for additional recreation time or 'good time' or additional food or other benefits."  *Id.* ¶ 61.  According to Francis, "[b]ecause of Defendants Dovey and Green's policy,

---

[13] *See* Don Aines, *State Drops Assault Charges Against MCTC Officer*, THE HERALD-MAIL (Aug. 17, 2020 at 4:30 p.m.), https://perma.cc/XM57-LKXZ.

I may take judicial notice of the charges filed against Fleegle, and the disposition of them, because they are matters of public record.  *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

many correctional officer assaults on inmates go unreported." *Id.* ¶ 62. And, he alleges that "[t]hose policies encourage corrections officers to assault inmates as it did here when CO Fleegle assaulted Mr. Francis." *Id.* ¶ 63.

Further, Francis alleges that "Warden Dovey, Secretary Green and the DPSCS were responsible for promulgating and implementing and following policies and procedures pertinent to the MCTC and specifically, and not limited to, the safety and well-being of inmates such as Mr. Francis." *Id.* ¶ 67. Francis contends that Dovey, Green, and the DPSCS were to fulfill these "duties" so as "to assure the safety and well-being of all inmates entrusted to the defendant State and its DPSCS and Secretary Green and Warden Dovey." *Id.* ¶ 68.

Additionally, Francis asserts, *id.* ¶ 69: "The corrections officers at MCTC, including CO Fleegle, were aware that the administrative review procedure was corrupt." And, "many of them, including CO Fleegle on this occasion, believed that they could assault inmates with impunity." *Id.* Francis also alleges that Fleegle and the corrections officers at MCTC "knew that because of the corrupted ARP process, when they did in fact assault an inmate, there would be no penalty." *Id.* ¶ 70. And, Francis alleges that corrections officers knew that "not only would there be no penalty to corrections officers who assaulted inmates, the inmate who complained would ultimately be punished by being placed in solitary confinement, losing commissary, losing recreation time, losing phone privileges or losing 'good time' credits." *Id.* ¶ 71.

According to Francis, the ARP process "disincentivizes inmates from reporting assaults." *Id.* ¶ 72. He alleges that, "[b]ecause the corrections officers are aware that the inmates cannot adequately respond to an assault in any meaningful way, corrections officers did and continue to assault inmates." *Id.* ¶ 73. Additionally, Francis asserts, *id.* ¶ 74:

> Defendants Green and Dovey were aware of [the] corrupted ARP process and were aware of the corrections officers's [sic] belief that the corrections officers

could assault inmates with impunity. Defendants Green and Dovey could have acted to repair the corrupted ARP process. Yet, Defendants Green and Dovey refused to act to stop the assaults on inmates, including CO Fleegle's assault of Mr. Francis, and refused to act to stop the corrupted ARP process and refused to stop placement of complaining inmates in solitary confinement.

Further, Francis states, *id.* ¶ 75: "Because of MCTC's history of inmate assaults, Defendants Green and Dovey were aware that having the corrupted ARP process and placement of complaining inmates in solitary confinement led to corrections officers assaulting more inmates."

Plaintiff also alleges that Dovey and Green "refuse[d] to take action" to address the issues, and their inaction harmed Francis. *Id.* ¶ 76. He also asserts, *id.*, that defendants "actively played significant roles in creating the corrupted process by placing inmates who insisted on adjudicating their matters through the ARP process in solitary confinement (and/or administrative segregation) and only hiring persons in charge of the review process that would find as justified even the most egregious correction officer conduct."

In addition, plaintiff claims that this "failure to act had a tendency to create a culture of vigilantism and anarchy and chaos, where inmates were routinely assaulted." *Id.* ¶ 77. And, he asserts that Dovey and Green "designed, implemented and enforced the policies, practices and customs" as to the following, *id.* ¶¶ 78–79:

> 1) punishing inmates who report assaults; 2) thwarting the ARP process; 3) encouraging inmates to decline pursuing administrative remedies for correction officer assaults and other misconduct; and 4) placing inmates who refused to give up their right to have an ARP in solitary confinement.

Francis reiterates, *id.* ¶ 80: "These policies encouraged CO Fleegle to assault Mr. Francis in that they allowed CO Fleegle to believe that he would not be punished for assaulting Mr. Francis." And, Francis states that before Francis was assaulted, "Dovey and Green created and

were aware of the policy and practices that led to CO Fleegle's assault of Mr. Francis and became so aware from their day to day interactions within DPSCS and MCTC." *Id.* ¶ 81.

According to Francis, "[i]t is unlawful to influence the process by which inmates can seek redress against corrections officers." *Id.* ¶ 82.  Yet, he contends that Dovey and Green "influenced the process by punishing inmates who insist on partaking in the ARP process." *Id.* ¶ 83.  He reiterates that the Supervisory Defendants "punished those inmates by placing them in solitary confinement/administrative segregation, taking away commissary, taking away recreation time, taking away phone privileges and/or taking away 'good time' credits." *Id.*

Moreover, Francis reiterates that, "based on the environment fostered by Dovey and Green," Fleegle "assaulted Mr. Francis because CO Fleegle believed . . . that he could assault Mr. Francis without being punished." *Id.* ¶ 84.  According to plaintiff, Fleegle "believed that even if Mr. Francis did report the assault, the ARP process would protect CO Fleegle from punishment." *Id.*

In addition, Francis reiterates that "Green and Dovey routinely ignored assaultive conduct from corrections officers," *id.* ¶ 85, and that "[i]gnoring the assaultive conduct had the tendency to encourage corrections officers to commit assaults because corrections officers knew that they would not be punished for assaultive conduct." *Id.* ¶ 86.  Further, he repeats that "Green and Dovey were aware that ignoring the assaultive conduct by corrections officers encouraged corrections officers to commit assault." *Id.* ¶ 87.  And, Francis asserts that "CO Fleegle was aware that Defendants Green and Dovey would ignore any assaultive conduct that he committed" which "also contributed to CO Fleegle assaulting Mr. Francis." *Id.* ¶ 88.

In sum, Francis claims, *id.* ¶ 192:[14]

---

[14] The allegation in ¶ 192 appeared in plaintiff's prior suit.  *See* ECF 53, ¶ 172.

Defendants Green and Dovey enacted and/or perpetuated a policy, practice and/or custom that encouraged this behavior by the CO Fleegle. Defendants Green and Dovey have done so through explicit and implicit instruction to the CO Fleegle and other correction officers or have acquired knowledge of such a policy, practice and/or custom and have not prevented its exercise.

## II.      Standards of Review

### A.

The Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  *See* ECF 78.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(d), however, a court, in its discretion, may consider matters outside of the pleadings.  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous

materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Hous., LLC*, 672 F. App'x at 222 (citation omitted) ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'").  However, when the movant expressly captions its motion as one for summary judgment "in the alternative," and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2004, April 2022 update). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.*  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.*

Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121, 128–29 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was

needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.    Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).    "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin. Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam).   A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874–75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).   But, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant."  *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods*, 302 F.3d at 244 (citations omitted).  The Fourth Circuit has

placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit.'" *Harrods*, 302 F.3d at 244 (internal citations omitted).  Despite this, the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  And, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

On the other hand, "'[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of [Rule 56(d)] to set out reasons for the need for discovery in an affidavit.'"  *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (quoting *Hayes v. N. State L. Enf't Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993)); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 n.3 (4th Cir. 1990) ("[I]f plaintiffs genuinely were concerned that defendant's motion was premature, plaintiffs should have sought relief under Fed. R. Civ. P. 56[(d)].").

Notably, Francis is not a *pro se* litigant.  And, his attorney did not request an opportunity to conduct discovery.  Nor did counsel submit an affidavit as to the need for discovery.  Nevertheless, I decline to construe the Motion as one for summary judgment.

As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a

sword or mask." *McCray*, 741 F.3d at 483; *accord Putney*, 656 F. App'x at 639.  And, the Fourth

Circuit recently reaffirmed this principle when it concluded that a district court abused its

discretion by granting summary judgment before discovery, even though the plaintiff failed to

comply with Rule 56(d), because "the district court was on fair notice of potential disputes as to

the sufficiency of the summary judgment record."  *Shaw*, 59 F.4th at 128.  In *Shaw*, the Court

acknowledged that much of the evidence the plaintiff needed involved the subjective knowledge

of the prison officials or was in their exclusive control.  *Id.*; *see also Pledger v. Lynch*, 5 F.4th 511,

526 (4th Cir. 2021).

Accordingly, I shall construe the Motion as one to dismiss.

## B.

As noted, the State and the Supervisory Defendants move to dismiss under Fed. R. Civ. P.

12(b)(6).  ECF 78.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

plaintiff's complaint.  *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *ACA Fin.*

*Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable*

*Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846

F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir.

2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v.*

*Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A

Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a

plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading

requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d

321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).

That rule provides that a complaint must contain a "short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide

the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556

U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading

standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 304–05; *Paradise Wire &*

*Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff

need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S.

at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby,*

*Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are

generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.

2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation.

*Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir.

2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n

unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of

relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the

complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc);

*accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in original) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585-86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger*, 510 F.3d at 450.

However, under limited circumstances, when a court is resolving a Rule 12(b)(6) motion, it may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508. In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (internal citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon*

*Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

"[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Vol. Fire Dep't. Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "As examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'"

*Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). This includes taking judicial notice of documents from state court proceedings and other matters of public record, without converting the motion to one for summary judgment. *Parikh v. Frosh*, PX-22-110, 2023 WL 131043, at *5 (D. Md. Jan. 9, 2023); *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir.); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n. 2 (D. Md. 2013); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (concluding that a district court may "properly take judicial notice of its own records").

However, there are limitations under Fed. R. Evid. 201.  A court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the State and the Supervisory Defendants submitted four exhibits with their Motion.  *See* ECF 78-2 to ECF 78-5.  These include a Declaration of Tina Hull, the Litigation Coordinator for MCTC, and records with regard to Francis's housing after the Incident (ECF 78-2); a Declaration of Jane Sachs, the Director of Correctional Training for DPSCS, concerning MCTC's training policies and information about Fleegle's training (ECF 78-3); a Declaration of

Lisa Wagner, the Acting Manager–Records Unit for Information, Technology and Communications Division of Record Management for DPSCS, as to Fleegle's disciplinary record prior to the Incident (ECF 78-4); and an Affidavit of Joyce Miller (ECF 78-5), the Director of Insurance of the Insurance Division in the State Treasurer's Office.

In her Affidavit, Miller avers that the Treasurer's Office never received statutory notice of any claim arising from the Incident. *Id.* ¶ 4. Further, she contends that until March 4, 2022, the Treasurer's Office was never served with a summons or a complaint regarding the assault of January 19, 2019. *Id.* ¶ 5. And, she claims that in March 2022, the State Treasurer's Office was only served by email with a copy of the suit filed in the State case. *Id.*

At this juncture, I cannot consider ECF 78-2, ECF 78-3, and ECF 78-4, because these documents are not "integral" to the Third Amended Complaint. In particular, they do not "give[] rise to the legal rights asserted." *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 (citation omitted). That the suit references the disciplinary investigation of Fleegle does not alter this conclusion. *See Goines*, 822 F.3d at 166 (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *see also Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015) (finding that a document with "no independent legal significance to [plaintiff's] claim" was not integral to complaint).

However, it is appropriate for the Court to consider ECF 78-5, the Affidavit of Joyce Miller, who avers that plaintiff failed to provide notice of his claims to the State, as required by the Maryland Tort Claims Act ("MTCA"), Md. Code (2021 Repl. Vol.), § 12-101 *et seq.* of the State Government Article ("S.G."). As discussed, *infra*, the issue of whether plaintiff complied with the MTCA's notice requirement is a condition precedent to suit. *See, e.g.*, *Brooks v. St. Charles Hotel Operating, LLC.*, DLB-23-0208, 2023 WL 6244612, at *3 (D. Md. Sept. 26, 2023) ("Because this dispute regarding notice is not intertwined with facts central to the merits of Brooks's claims, the

Court may consider the affidavits submitted by each party.") (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009)).

### III.   Discussion

### A.   Federal Claims

### 1.   Legal Standard

Counts 1, 2, 3, 4, and 5 are predicated on 42 U.S.C. § 1983.   Section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."   *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).   Under § 1983, a plaintiff may file suit against any person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.   *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).

However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"   *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).   In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."   *City of Monterey*, 526 U.S. at 707.

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under color of state law."   *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d

634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997). "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' applicable to Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

The doctrine of respondeat superior does not apply in § 1983 cases. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Indeed, "'[i]n a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 677) (alteration in *Younger*). If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (same); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (same).

But, as the Fourth Circuit articulated in *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013), a supervisor may be held liable "for the failings of a subordinate under certain narrow circumstances." Pursuant to § 1983, liability for supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020); *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). This requires a plaintiff to allege, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994):

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

To qualify as "pervasive," the challenged conduct must be "widespread, or at least . . . used on several different occasions." *Shaw*, 13 F.3d at 799. Therefore, it is insufficient to point "to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . nor can he reasonably be expected to guard against the deliberate [unlawful] acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373) (alteration inserted). But, a supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official for his deliberate indifference or acquiescence to "the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799.

### 2. Discussion

Francis asserts multiple constitutional claims against Dovey and Green: "Excessive Force," in violation of the Fourth Amendment (Count 1); "Cruel and Unusual Punishment," in violation of the Eighth Amendment (Count 2); violation of his right to Due Process, in contravention of the Fourteenth Amendment (Count 3); and violation of his right to "Freedom of Speech," guaranteed by the First Amendment (Count 4). ECF 76, ¶¶ 90–145. And Count 9, lodged against Dovey and Green, asserts "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision," in violation of the Eighth and Fourteenth Amendments to the Constitution as well as Article 40 of the Maryland Declaration of Rights. *Id.* ¶¶ 198–211.

Count 5 asserts a so-called "*Monell* Claim" against the State. It is premised on *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). ECF 76, ¶ 146–57.

In my Amended Memorandum Opinion of March 10, 2023 (ECF 75), and the corresponding Order of February 24, 2023 (ECF 74), I dismissed Counts 1, 2, 3, 4, and 5, with prejudice. Plaintiff asserts that he accepts the Court's decision and concedes that Counts 1 through 5 are subject to dismissal. ECF 80 at 1–2. Thus, for the reasons stated in ECF 75, which I incorporate here, I shall again dismiss Counts 1, 2, 3, 4, and 5, with prejudice.[15]

As indicated, Count 9 is lodged against Dovey and Green under the Eighth and Fourteenth Amendments to the Constitution and Article 40 of the Maryland Declaration of Rights. ECF 76, ¶¶ 198–211. Previously, I construed Count 9 as a claim based solely on State law, ECF 75 at 34 n.15, and I dismissed it, without prejudice. ECF 74. Specifically, I explained, ECF 75 at 34 n.15 (emphasis added):

---

[15] Because I shall dismiss these claims, with prejudice, I need not address defendants' alternative contention that they are entitled to qualified immunity. ECF 78-1 at 30–31.

In Count IX, Francis asserts a claim of "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision," in violation of the Eighth and Fourteenth Amendments as well as Article 40 of the Maryland Declaration of Rights. *Id.* ¶¶ 178–91. Article 40 pertains to free speech.

In response to the Supervisory Defendants' Motion, plaintiff states that the "First, Second, Third, and Fourth Claims are brought against the individual Defendants (Defendant Fleegle and the individual Supervisory Defendants Dovey and Green) for alleged violations of the federal constitution" (ECF 64 at 4), and he reiterates that the "Sixth, Seventh, Eighth, and Ninth Claims are based upon Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights." *Id.* at 7. **Therefore, I will construe Count IX as one pursuant to State law, rather than federal law.**

In the Motion, defendants argue, ECF 78-1 at 19: "The Third Amended Complaint provides no reason to reconsider this Court's dismissal of Plaintiff's federal constitutional claims against the State and against Dovey and Green in both their official capacity and their individual capacity." The Motion itself characterizes Count 9 as alleging only a "State constitutional claim[]." *Id.* at 8; *see also id.* at 10; *id.* at 19; *id.* at 20; *id.* at 22; *id.* at 24. In contrast, the Motion addresses the Eighth Amendment in regard to Count 2 (*id.* at 4), and the Fourteenth Amendment in regard to Count 3. *Id.* at 7. Although the Motion references both Amendments in its discussion of Count 9, it posits that Count 9 is a State law claim and that Article 40 of the Maryland Declaration of Rights should be "construed like [its] federal counterparts." *Id.* at 20.

In his Opposition, Francis does not seek to construe Count 9 under federal law. *See* ECF 80. Nor does he reference the Eighth or Fourteenth Amendments in his Opposition. *See id.* And, he explains, *id.* at 1: "In no way was the Third Amended Complaint intended to revisit the Court's earlier ruling." Therefore, I shall again construe Count 9 as a claim based solely on State law.

I turn to address the State law claims.

### B.  State Law Claims

Francis asserts multiple claims against all defendants under Maryland law: "Excessive Force," in violation of Article 24 of the Maryland Declaration of Rights (Count 6); "Cruel and

Unusual Punishment," in violation of Articles 16 and 25 (Count 7); and infringement of the right to "Free Speech," in violation of Article 40 (Count 8).  ECF 76-1, ¶¶ 158–97.  In addition, Francis alleges a claim against Dovey and Green for "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision," in violation of Article 40 of the Maryland Declaration of Rights (Count 9).  *Id.* ¶¶ 198–211.

Plaintiff also asserts a variety of tort claims under Maryland law: Intentional Infliction of Emotional Distress, against Fleegle, Dovey, and Green (Count 11); Conspiracy, against Fleegle, Dovey, and Green (Count 12); Negligent Hiring, Training, Retention, and Supervision, against the State, Dovey, and Green (Count 13); and Respondeat Superior, against the State (Count 15).  *Id.* ¶¶ 121–265.[16]  However, in his Opposition, plaintiff "does not offer a counter argument" as to Counts 11, 12, and 13, with respect to Dovey, Green, or the State.  ECF 80 at 1.  Nor does he address Count 15, except to say that he does not "intend[] to revisit the Court's earlier ruling," in which I dismissed all claims against the State, with prejudice.  *See id.*  As he puts it, "the question is whether the facts as amended in the Third Amended Complaint are sufficient to state a claim" with respect to Counts 6, 7, 8, and 9.  *Id.* at 2.

Accordingly, I shall rely on my analysis in the Amended Memorandum Opinion of March 10, 2023 (ECF 75 at 42–67) as the basis to dismiss Counts 11, 12, 13, and 15, with prejudice, as to Dovey, Green, and the State.  As a result, only Counts 6, 7, 8, and 9 remain in issue.

As a threshold matter, the State and the Supervisory Defendants argue that the State law claims in the Third Amended Complaint are barred because Francis failed to adhere to the notice requirement under the Maryland Tort Claims Act, S.G. § 12-104(a)(1).  ECF 78-1 at 16, 21–22.  Plaintiff fails to respond to this contention.  *See* ECF 80.

---

[16] Again, this Memorandum Opinion does not address claims against Fleegle.

Additionally, defendants contend that the amended suit "alleges no change in the law, no newly discovered facts, no error in the Court's ruling, and no other purported basis for this Court to revise its holding or to reconsider the reasoning set forth in the Amended Memorandum Opinion." ECF 78-1 at 9. And, they assert, *id.* at 11: "The twenty new paragraphs, ¶¶ 69-88, like the prior statements in the Second Amended Complaint relating to Defendants Dovey and Green, are conclusory allegations and contain no allegations of facts relating to any specific event or events."

Conversely, Francis maintains that the additional paragraphs rectify any insufficiencies in his prior pleadings. He argues: "The Third Amended Complaint pleads in greater detail the malicious acts of Dovey and Green." ECF 80 at 2. Further, Francis argues that he has adequately alleged malice as to Dovey and Green, because he alleges that they "set a policy that unlawfully thwarted the process by which inmates could complain against corrections officers." *Id.* at 3. And, Francis contends that the actions of Dovey and Green have led to "consequences . . . borne out and realized by Mr. Francis as he continues to receive treatment for post traumatic stress disorder due to the assault and subsequent placement in isolation." *Id.* at 4.

### 1. The MTCA Generally

The MTCA offers "a limited waiver of sovereign immunity and 'is the sole means by which the State of Maryland and its personnel may be sued in tort.'" *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (citation omitted); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993); *Mitchell v. Hous. Auth. of Balt. City*, 200 Md. App. 176, 201–02, 26 A.3d 1012, 1027–28 (2011).

At the relevant time, S.G. § 12-104, titled "Waiver of Immunity," provided, in part (italics

in original):[17]

> (a) *In general.* — (1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.
>
> (2) The liability of the State and its units may not exceed $400,000 to a single claimant for injuries arising from a single incident or occurrence.

---

[17] In 2021, the Maryland General Assembly amended S.G. § 12-104, effective July 1, 2022. *See* 2021 Md. Laws, Ch. 59. The parties do not address which version of the statute applies here. But, I shall consider the 2020 version of the law, as it was the law in effect at the relevant time. In any event, the revisions are not material here. They pertain largely to monetary amounts and to claims concerning law enforcement officers.

The current version of S.G. § 12-104 provides, in part:

(a) *In general.* — (1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.

(2)(i) Except as provided in subparagraphs (ii) and (iii) of this paragraph, the liability of the State and its units may not exceed $400,000 to a single claimant for injuries arising from a single incident or occurrence.

(ii) If liability of the State or its units arises from intentional tortious acts or omissions or a violation of a constitutional right committed by a law enforcement officer, the following limits on liability shall apply:

1. Subject to item 2 of this subparagraph, the combined award for both economic and noneconomic damages may not exceed a total of $890,000 for all claims arising out of the same incident or occurrence, regardless of the number of claimants or beneficiaries who share in the award; and

2. In a wrongful death action in which there are two or more claimants or beneficiaries, an award for noneconomic damages may not exceed 150% of the limitation established under item 1 of this item, regardless of the number of claimants or beneficiaries who share in the award.

(iii) If liability of the State or its units arises under a claim of sexual abuse, as defined in § 5-117 of the Courts Article, the liability may not exceed $890,000 to a single claimant for injuries arising from an incident or occurrence.

(b) *Exclusions and limitations* — Immunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article.

(b) *Exclusions and limitations.* — Immunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article.

S.G. § 12-105 is titled "Immunity of State personnel."  It provides, *id.*: "State personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article" ("C.J.") of the Md. Code (2020 Repl. Vol.).

C.J. § 5-522 is titled "Immunity-State and its Personnel and Units."  C.J. § 522(a) provides, in part: "Immunity of the State is not waived . . . for . . . 4) Any tortious act or omission of State personnel that: (i) Is not within the scope of the public duties of the State personnel; or (ii) Is made with malice or gross negligence . . . ."

C.J. § 5-522(b) provides: "*In general.* — State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver."  *See also Cooper v. Rodriguez*, 443 Md. 680, 707, 118 A.3d 829, 845 (2015).

"The Court of Appeals of Maryland[18] has observed that, when read in tandem, [S.G. § 12-104 and C.J. § 5-522] establish that the tort 'liability of the State and [the tort] liability of individual State personnel are mutually exclusive.  If the State is liable, the individual is immune; if the individual is liable, the State is immune.'"  *Marks v. Dann*, DKC-13-0347, 2013 WL 8292331, at

---

[18] In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland ("SCM").  The voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland ("ACM").  These changes went into effect on December 14, 2022.  *See* Press Release, *Voter-Approved Constitutional Change Renames High Courts to Supreme and Appellate Court of Maryland*, MARYLAND COURTS (Dec. 14, 2022), https://perma.cc/K87C-UUCG.  However, I shall refer to the courts by the names in use when the cited opinions were decided.

*7 (D. Md. July 24, 2013) (alteration in *Marks*) (quoting *Newell v. Runnels*, 407 Md. 578, 635, 967 A.2d 729, 763 (2009)), *affirmed*, 600 F. App'x 81 (4th Cir. 2015) (per curiam).

The "MTCA does not distinguish between constitutional torts and common law torts. Accordingly, the same standards of malice and gross negligence govern" State common law tort claims and violations of State constitutional rights. *Newell*, 407 Md. at 640 n.28, 967 A.2d at 766 n.28. Moreover, statutory immunity under the MTCA applies to both negligent and intentional torts. *See Lee v. Cline*, 384 Md. 245, 266, 863 A.2d 297, 310 (2004); *see also Espina v. Jackson*, 442 Md. 311, 325, 112 A.3d 442, 450 (2015).[19]

### 2. MTCA Notice Requirement

The MTCA establishes a notice requirement for claims brought pursuant to the statute. *See Gray v. Maryland*, 228 F. Supp. 2d 628, 641 (D. Md. 2002) ("In order for a plaintiff to bring a claim against the State or a state officer under the MTCA, certain notice requirements must be met."). In general, filing a notice of claim with the State Treasurer is a "condition precedent to bringing an action under the MTCA." *Id.*

At the time in issue, the notice requirement contained in the MTCA stated, in part, S.G. § 12-106(b), (c) (italics in original):

> (b) *Claim and denial required.* — Except as provided in subsection (c) of this section, a claimant may not institute an action under this subtitle unless:
>> (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;
>> (2) the Treasurer or designee denies the claim finally; and
>> (3) the action is filed within 3 years after the cause of action arises.
>
> (c) *Effect of failure to submit written claim.* — (1) If a claimant fails to submit a written claim in accordance with subsection (b)(1) of this section, on motion by a

---

[19] Statutory immunity under the MTCA is distinct from Maryland's common law doctrine of public official immunity, which "is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee*, 384 Md. at 258, 863 A.2d at 305.

claimant and for good cause shown, the court may entertain an action under this subtitle unless the State can affirmatively show that its defense has been prejudiced by the claimant's failure to submit the claim.

> (2) Subsection (b)(1) and (2) of this section does not apply if, within 1 year after the injury to person or property that is the basis of the claim, the State has actual or constructive notice of:
>
>> (i) the claimant's injury; or
>>
>> (ii) the defect or circumstances giving rise to the claimant's injury.

The notice requirement "is a condition precedent to the right to maintain an action for damages . . . ." *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F. Supp. 599, 603 (D. Md. 2005) (construing Local Government Tort Claims Act) ("LGTCA")) [20]; *see Gray*, 228 F. Supp. 2d at 641. Therefore, "compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." In *Hansen v. City of Laurel*, 420 Md. 670, 25 A.3d 122 (2011), an LGTCA case, the Maryland Court of Appeals said: "A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in his/her complaint. If a plaintiff omits this step, he or she is subject to a motion to dismiss, for instance, based on a failure to state a claim upon which relief can be granted." *Id*. at 694, 25 A.3d at 137.

Notice to the State Treasurer serves an important purpose. It is intended to "afford[] the State the opportunity to investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." *Haupt v. State*, 340 Md. 462, 470, 667 A.2d 179, 183 (1995).

The MTCA sets a deadline of one year for a claimant to provide the required notice. "In

---

[20] Although the LGTCA and MTCA are not identical, analysis of one statute informs analysis of the other. Indeed, the Maryland Court of Appeals has drawn comparisons between the LGTCA and MTCA. *See, e.g.*, *Espina*, 442 Md. at 324, 112 A.2d at 450 (drawing on analysis of the MTCA to find that the LGTCA "appears to encompass constitutional torts"); *Bd. of Educ. of Prince George's Cnty. v. Marks–Sloan*, 428 Md. 1, 29–30, 50 A.3d 1137, 1154–55 (2012) (using both statutes for guidance to interpret Maryland law governing county boards of education); *see also Heron v. Strader*, 361 Md. 258, 263, 761 A.2d 56, 58–59 (2000).

the absence of statutory authority to excuse the late filing" of a notice, claims under the MTCA "must fail." *Simpson v. Moore*, 323 Md. 215, 228–29, 592 A.2d 1090, 1096 (1991); *see also McDaniel v. Maryland*, RDB-10-00189, 2010 WL 3260007, at *4 (D. Md. Aug. 18, 2010); *Ferguson v. Loder*, 186 Md. App. 707, 728, 975 A.2d 284, 296 (2009).

Plaintiff's claims arise from the Incident of January 19, 2019.  Joyce Miller, the Director of Insurance in the State Treasurer's Office, asserts in her Affidavit (ECF 78-5), in part, *id.* at 2:

> 4. At the request of the Office of the Attorney General of the State of Maryland, I have searched the records of the Insurance Division, and I affirm that the Insurance Division never received any notice of a claim arising from the January 19, 2019, assault on Plaintiff Francis, pursuant to SG § 12-106(b)(1) (A written claim is due to the Treasurer within 1 year after the injury to the persons or property that is the basis of the claim).

> 5. I also affirm that the Treasurer's Office was not served with a summons or complaint relating to the January 19, 2019, assault on Plaintiff Francis at any time prior to March 4, 2022.  On March 4, 2022, the State Treasurer's Office was served by email with a copy of the Summons and Complaint in the action of *Jeffrey Francis v. State of Maryland, et al.*, Case No. C-03-CV-22-000176, in the Circuit Court for Baltimore County, which case subsequently was removed to the United States District Court for the District of Maryland as Case No. ELH-22-806.

It is undisputed that Francis did not submit a written claim to the State Treasurer or the Treasurer's designee within one year of the Incident.  *See* ECF 78-1 at 16, 21–22; *see also* ECF 80.  In the Third Amended Complaint, Francis alleges, ECF 76, ¶ 6: "Given his status as an inmate, and having been placed in solitary confinement following the assault, Mr. Francis was unable to comply with sending a letter pursuant to the [MTCA]."  But, Francis also asserts that he was moved out of isolation several weeks after the Incident.  *Id.* ¶ 40.  He does not provide any facts that, if proved, would show that his period in isolation or his status as an inmate precluded him from sending notice to the Treasurer's Office within one year of the Incident.

Moreover, the State and the Supervisory Defendants complain in the Motion that Francis has yet to provide written notice.  ECF 78-1 at 16; *see Renn*, 352 F. Supp. 2d at 603.  In her

Affidavit (ECF 78-5), Miller avers that Francis served a copy of his State court complaint on the Treasurer's Office by email on March 4, 2022, over three years after the Incident. *Id.* at 2.  As mentioned, Francis fails to address these contentions in his Opposition.

The failure of plaintiff to provide timely notice is not necessarily fatal, however.  The statute provides that "the court may entertain an action under this subtitle," despite a failure to submit a timely written claim to the Treasurer's Office, "*on a motion by a claimant and for good cause shown*."  S.G. § 12-106(c) (emphasis added).  If the plaintiff satisfies those criteria, the statute then requires the State to demonstrate prejudice.  But, Francis has not filed a motion to excuse his failure, pursuant to S.G. § 12-106(c)(1).  Nor has he attempted to show good cause for his dereliction.  *Id.*  Thus, he has not satisfied S.G. § 12-106(c).

As I construe the statute, S.G. § 12-106(c)(2) is also relevant.  Under S.G. § 12-106(c)(2), the notice requirement under § 12-106(b)(1) does not apply if, "within 1 year after the injury . . . that is the basis of the claim, the State has actual or constructive notice of: i) the claimant's injury; or ii) the defect or circumstances giving rise to the claimant's injury."

In an earlier opposition (ECF 64) to defendants' previous motion to dismiss (ECF 60), Francis argued that, within one year of the Incident, the State had actual or constructive notice of the Incident, and was aware of Francis's injury and the circumstances that gave rise to his claim. ECF 64 at 17.  He has not renewed that argument, however.  *See* ECF 80.  Nevertheless, in an abundance of caution, I will consider it.

In my view, at most, the State had actual or constructive notice only as to claims by plaintiff with regard to Fleegle.  He was the one who was investigated by DPSCS and charged with crimes by the State.  ECF 76, ¶¶ 6, 53.

Francis alleges that a "full investigation" was initiated "in the days following the incident." *Id.* at ¶ 3; *see also id.* ¶ 52.  To the extent that DPSCS conducted an investigation, there is no allegation of any investigation of or disciplinary action against Dovey or Green.  Nor does Francis assert any facts on which to conclude that the State investigated possible criminal conduct of Dovey or Green, or otherwise had notice of the array of claims that plaintiff has lodged against Green, Dovey, or the State itself.  Moreover, there is nothing in the suit that remotely suggests that the State would have discerned from the Incident that plaintiff intended to launch numerous constitutional and tort claims against two supervisory defendants who were not even present when the assault occurred.

In short, there are no facts alleged in the suit from which to impute actual or constructive notice to the State of claims against anyone but Fleegle, or injury caused to plaintiff by anyone but Fleegle.  Moreover, the agency's own investigation of the Incident is not a substitute for notice to the Treasurer.

The notion that a State agency's general awareness of an injury or an occurrence is enough to satisfy the statutory notice requirement to the Treasurer is misguided.  The State, of course, functions through its agencies, departments, and their personnel.  But, there are numerous agencies with distinct tasks.  That the State's penal or correctional systems have knowledge of a use of force incident does not amount to notice of the incident to the State's Treasurer, whose interests and concerns differ markedly, particularly as to fiscal matters.

As mentioned, "[n]otice to the Treasurer serves important public purposes." *Chinwuba v. Larsen*, 142 Md. App. 327, 356, 790 A.2d 83, 99 (2002), *rev'd on other grounds*, 377 Md. 92, 832 A.2d 193 (2003).  It "affords the State the opportunity to investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." *Haupt*,

340 Md. at 470, 667 A.2d at 183.  And, it is the Treasurer who "considers the fiscal consequences of the claim, and then decides which of several options to pursue."  *Chinwuba*, 142 Md. At 356, 790 A.2d at 99; *see id.* at 356–57, 790 A.2d at 100; *see also Leppo v. State Highway Admin.*, 330 Md. 416, 428, 624 A.2d 539, 545 (1993).

The claims against Fleegle arising from his assaultive conduct are a far cry from the claims at issue here, such as constitutional claims under the First, Fourth, Eighth, and Fourteenth Amendments, a "*Monell*" claim, State constitutional claims, and common law tort claims.  The breadth of plaintiff's claims underscores the State's need for and entitlement to notice.  To conclude otherwise would render superfluous S.G. § 12-106's provision that notice be provided "to the Treasurer or a designee of the Treasurer."

I conclude that the investigation of Fleegle by DPSCS and the prosecution of him by the State did not constitute notice to the State as to the claims against Dovey, Green, or the State. Francis did not comply with his statutory duty to provide notice to the Treasurer.  Nor has he alleged facts that support application of any exception to the notice requirement.  It follows that the State constitutional claims (Counts 6, 7, 8, 9) must be dismissed as to the State, and as to those individual defendants who are shielded by State statutory immunity, discussed next.[21]

### 3.  Statutory Immunity

### a.  Legal Standard

The Supervisory Defendants argue that they are entitled to statutory immunity under the MTCA because plaintiff has not alleged facts that, if proven, would establish that they acted with malice or gross negligence.  ECF 78-1 at 22–24.

---

[21] As discussed, I have already dismissed all tort claims (Counts 11, 12, 13, 15) against the State.

As discussed, the MTCA provides that State personnel are immune from suit for any "tortious act or omission that is within the scope of the public duties of the [official] and is made without malice or gross negligence, and for which the State [has] waived immunity." C.J. § 5-522(b). In that circumstance, the MTCA "substitutes the liability of the State for the liability of the state employee." *Lee*, 384 Md. at 262, 863 A.2d at 307. "And in a precisely complementary provision, the MTCA waives the state's immunity for tort actions brought in state court except where a tortious act or omission by state personnel is outside the scope of their public duties or made with malice or gross negligence." *Marks*, 600 F. App'x at 85 (citing C.J. § 5–522(a)).

"At issue in MTCA cases like this one, in other words, is not whether a person injured by tortious state action . . . will have any remedy, but whether that remedy will lie against a state official in his or her personal capacity or against the state itself." *Marks*, 600 F. App'x at 85. If State personnel defendants are entitled to statutory immunity, any claims against them are instead asserted against the State itself. If, however, the state personnel are not entitled to immunity under the statute, then the State is immune from liability for their conduct.

With respect to State law tort claims, "state personnel are not immune from suit and liability in tort when the plaintiff's complaint *sufficiently* alleges malice or gross negligence." *Barbre v. Pope*, 402 Md. 157, 181–82, 935 A.2d 699, 714 (2007) (emphasis in original). When this occurs, "the claims fall outside the MTCA and 'the State Treasurer does not require early notice' . . . ." *Id.* (quoting *Pope v. Barbre*, 172 Md. App. 391, 414, 915 A.2d 448, 462 (2007)). Thus, and of import here, compliance with the MTCA's notice requirement is not necessary in a suit against individual State personnel in which it is sufficiently alleged that the defendants acted with malice or gross negligence. *Barbre*, 402 Md. at 181–82, 935 A.2d at 714; *see also, e.g.*, *Taylor v. Somerset Cnty. Comm'rs*, RDB-16-0336, 2016 WL 3906641, at *5 (D. Md. July 19, 2016). Indeed, "[t]he

MTCA's requirements have no effect . . . on a plaintiff's claims against individual state employees." *Canter v. Schoppert*, GJH-16-2545, 2020 WL 1150774, at *9 (D. Md. Mar. 6, 2020).

The Maryland Court of Appeals determined in *Williams v. Morgan State Univ.*, 484 Md. 534, 558, 300 A.3d 54, 67 (2023), that the Maryland General Assembly "did not intend for a 'tort action' under the MTCA to include federal statutory causes of action." Therefore, Maryland's waiver of sovereign immunity for a tort action under the Maryland Tort Claims Act does not "extend to federal statutory claims." *Williams v. Morgan State Univ.*, 2023 WL 6491919, at *1 (4th Cir. Oct. 5, 2023) (per curiam).

To "get past" a State official's immunity defense as to State law claims, a plaintiff "must point to specific facts that raise an inference that [the official's] actions were improperly motivated." *Nero v. Mosby*, 890 F.3d 106, 128 (4th Cir. 2018). Even at the motion to dismiss stage, "'the plaintiff must allege with some clarity and precision those facts which make the act malicious.'" *Manders v. Brown*, 101 Md. App. 191, 216, 643 A.2d 931, 943 (1994) (quoting *Elliot v. Kupferman*, 58 Md. App. 510, 526, 473 A.2d 960, 969 (1984)). And, "'[p]laintiffs face a high standard when pleading malice" because "conclusory allegations are insufficient.'" *Watkins v. Butler*, JRR-20-208, 2024 WL 37995, at *20 (D. Md. Jan. 3, 2024) (quoting *McDaniel*, 2010 WL 3260007, at *8).

There is no dispute that Warden Dovey and Secretary Green are State personnel. *See* S.G. § 12-101 (defining "State personnel" to include "a State employee or official who is paid in whole or in part by the Central Payroll Bureau in the Office of the Comptroller of the Treasury"); *see also Cooper*, 443 Md. at 727, 118 A.3d at 857 ("[A] correctional officer employed by the Division of Correction of the Maryland DPSCS[] is a State employee for purposes of the MTCA and also a public official for purposes of common law public official immunity."). Therefore, they are

entitled to statutory immunity for any alleged tortious acts or omissions committed within the scope of their public duties, absent malice or gross negligence. *See* C.J. § 5-522(b). But, Francis maintains that he has sufficiently alleged that the Supervisory Defendants acted with malice. ECF 80 at 3–4.

With this framework in mind, I turn to assess the Third Amended Complaint, to determine whether it sufficiently alleges malice or gross negligence as to Warden Dovey and/or Secretary Green. If so, the suit may proceed against them personally. But, if Dovey and Green are shielded by statutory immunity, the claims must instead be lodged against the State. However, under that circumstance, for the reasons stated earlier, such claims must fail for lack of compliance with the MTCA's notice requirement.

For purposes of MTCA immunity, "malice" refers to so-called "actual malice," *i.e.*, "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee*, 384 Md. at 268, 863 A.2d at 311 (citation omitted). "To establish malice, a plaintiff must show that the government official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Nero*, 890 F.3d at 127 (quoting *Bord v. Balt. Cnty.*, 220 Md. App. 529, 557, 104 A.3d 948, 964 (2014)).

Gross negligence means "'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.'" *Newell*, 407 Md. at 638, 967 A.2d at 764 (citation and internal footnote omitted); *see also Cooper*, 443 Md. at 686, 118 A.3d at 832–33. Put another way, an act is the product of gross negligence when it is committed by one who is "'utterly indifferent to the rights of others [such] that he acts

as if such rights did not exist.'"  *Newell*, 407 Md. at 638, 967 A.2d at 764–65 (citation omitted). By contrast, mere negligence is defined as "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm."  *Mayor & City Council of Baltimore v. Hart*, 395 Md. 394, 410, 910 A.2d 463, 472 (2006).

"Issues involving gross negligence are often more troublesome than those involving malice because a fine line exists between allegations of negligence and gross negligence."  *Barbre*, 402 Md. at 187, 935 A.2d at 717 (citing *State, Use of Abell v. Western Maryland R.R.*, 63 Md. 433, 443 (1885)).  Thus, courts in Maryland "have viewed gross negligence, rather, 'as something more than simple negligence, and likely more akin to reckless conduct . . . .'"  *Barbre*, 402 Md. at 187, 935 A.2d at 717 (quoting *Taylor v. Harford County Dep't of Soc. Servs.*, 384 Md. 213, 229, 862 A.2d 1026, 1035 (2004)).

The Maryland Court of Appeals "has recognized consistently that the determination of whether a State actor enjoys State personnel immunity is a question for the trier of fact."  *Newell*, 407 Md. at 636, 967 A.2d at 763; *see Cooper*, 443 Md. at 709, 118 A.3d at 846; *see also Taylor*, 384 Md. at 229, 862 A.2d at 1034 (citation and internal quotation marks omitted) ("Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence."); *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12, 14 (1968) (citations omitted) ("Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case" and "is usually a question for the jury and is a question of law only when reasonable [people] could not differ as to the rational conclusion to be reached.").  However, a plaintiff in federal court must satisfy the

-42-

*Twombly* and *Iqbal* requirements, discussed earlier.  *See Iqbal*, 556 U.S. at 684; *Twombly*, 550 U.S. at 570.

### b.  Policies and Practices

As to Dovey and Green, Francis seeks to rectify the insufficiencies of the Second Amended Complaint through the addition of twenty paragraphs in the Third Amended Complaint.   In general, plaintiff alleges that Dovey and Green acted maliciously.  *See* ECF 76, ¶¶ 69–88; *see, e.g.*, ¶¶ 166, 222.  For example, Francis asserts that defendants acted with malice by:

> 1) punishing inmates who report assaults; 2) thwarting the ARP process; 3) encouraging inmates to decline pursuing administrative remedies for correction officer assaults and other misconduct; and 4) placing inmates who refused to give up their right to have an ARP in solitary confinement.

*Id.* ¶¶ 78, 79; *see also*, *e.g.*, *id.* ¶¶ 46, 56, 59–64, 67–88, 192.  Defendants maintain that these allegations are merely conclusory.  ECF 78-1 at 11.

To overcome statutory immunity, a plaintiff "must point to *specific facts* that raise an inference that [the official's] actions were improperly motivated."  *Nero*, 890 F.3d at 128 (emphasis added).  And, the "facts which make the act malicious" must be alleged "with some clarity and precision."  *Elliot*, 58 Md. App. at 526, 473 A.2d at 969.

Moreover, "defendants are not fungible; [the Court] must examine what each is charged with doing or failing to do."  *Wells v. State*, 100 Md. App. 693, 703, 642 A.2d 879, 884 (1994).  Put another way, as to each defendant, a plaintiff "must have pled *facts* showing that [a defendant] acted with a wanton and reckless disregard for others."  *Boyer v. State*, 323 Md. 558, 579, 594 A.2d 121, 132 (1991) (emphasis in original).  "[S]omewhat vague allegations" do not support a conclusion that a defendant acted with malice or with gross negligence.  *Id.*

The new paragraphs articulate policies and practices that Dovey and Green are alleged to have created, perpetuated, or tolerated.  *See* ECF 76, ¶¶ 78, 79; *see, e.g.*, *id.* ¶ 64 (alleging that the

policies outlined in ¶¶ 59–62 "encourage corrections officers to assault inmates as it did here when CO Fleegle assaulted Mr. Francis"); *id.* ¶ 69 ("The corrections officers at MCTC, including CO Fleegle, were aware that the administrative review procedure was corrupt. Therefore, many of them, including CO Fleegle on this occasion, believed that they could assault inmates with impunity."); *id.* ¶ 70 ("The corrections officers at MCTC, including CO Fleegle on this occasion, knew that because of the corrupted ARP process, when they did in fact assault an inmate, there would be no penalty."); *id.* ¶ 74 ("Defendants Green and Dovey refused to act to stop the assaults on inmates, including CO Fleegle's assault of Mr. Francis, and refused to act to stop the corrupted ARP process and refused to stop placement of complaining inmates in solitary confinement."); *id.* ¶ 75 ("Because of MCTC's history of inmate assaults, Defendants Green and Dovey were aware that having the corrupted ARP process and placement of complaining inmates in solitary confinement led to corrections officers assaulting more inmates."); *id.* ¶ 81 ("Prior to the date on which Mr. Francis was assaulted, Dovey and Green created and were aware of the policy and practices that led to CO Fleegle's assault of Mr. Francis and became so aware from their day to day interactions within DPSCS and MCTC."); *id.* ¶ 84 ("CO Fleegle assaulted Mr. Francis because CO Fleegle believed (based on the environment fostered by Dovey and Green) that he could assault Mr. Francis without being punished.").

Plaintiff also alleges a failure to act by Green and Dovey in the face of knowledge of corruption. *See*, *e.g.*, *id.* ¶ 76 ("Not only did Defendants Green and Dovey refuse to take action to repair the corrupted process, they actively played significant roles in creating the corrupted process by placing inmates who insisted on adjudicating their matters through the ARP process in solitary confinement (and/or administrative segregation) and only hiring persons in charge of the review process that would find as justified even the most egregious correction officer conduct.");

*id.* ¶ 85 ("Defendants Green and Dovey routinely ignored assaultive conduct from corrections officers.").

Further, the Third Amended Complaint contains allegations of conduct engaged in by both Dovey and Green, primarily concerning matters of policy. *See, e.g.*, *id.* ¶ 59 ("Warden Dovey and Secretary Green have implemented policies that fail to adequately address correctional officer assaults on inmates."); *id.* ¶ 67 ("Warden Dovey, Secretary Green and the DPSCS were responsible for promulgating and implementing and following policies and procedures pertinent to the MCTC and specifically, and not limited to, the safety and well-being of inmates such as Mr. Francis."); *id.* ¶ 83 ("Dovey and Green influenced the process by punishing inmates who insist on partaking in the ARP process. Dovey and Green punished those inmates by placing them in solitary confinement/administrative segregation, taking away commissary, taking away recreation time, taking away phone privileges and/or taking away 'good time' credits.").

Even taking the new allegations as true, as I must at this juncture, they fail to meet the standard of "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee*, 384 Md. at 268, 863 A.2d at 311 (citation omitted). Plaintiff makes bald assertions of misconduct without any facts that, if proven, would establish intent, ill will, or gross negligence.

To illustrate, plaintiff alleges that Dovey and Green knew that institutional policies were causing harm to inmates, either directly or through the fostering of a harmful culture, yet they did nothing to ameliorate these issues. But, there are no facts whatsoever to establish that the Incident was not an isolated occurrence or that the Supervisory Defendants had the requisite knowledge. Plaintiff asserts, for example, that CO Fleegle acted as he did because Green and Dovey refused

"to repair the corrupted ARP process," ECF 76, ¶ 74, without a single fact to support the bald assertion.

It is well settled that a lawsuit is not a fishing expedition, and sufficient allegations are required to enable a party to conduct discovery. *See, e.g.*, *Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *McGee v. Hayes*, 43 Fed. App'x 214, 217 (10th Cir. 2002) ("The district court was not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim."); *Bastin v. Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997) ("The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition."); *E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996) (noting the "aphorism that discovery is not to be used as a fishing expedition"); *Anderson v. Boston Sci. Corp.*, 2013 WL 632379, at *3 (S.D. Ohio Feb. 20, 2013) (remarking that "discovery cannot be used as a fishing expedition to uncover the facts necessary to support the causes of action presented in the complaint"); *Sovereign Bonds Exch. LLC v. Fed. Republic of Germany*, 2011 WL 13100214, at *2 (S.D. Fl. Aug. 9, 2011) ("Parties may not file insufficient complaints with the hope of receiving discovery to make them sufficient."); *Top v. Ocean Petroleum, LLC*, 2010 WL 3087385, at *4 (D.N.J. Aug. 3, 2010) ("Until Plaintiff is able to allege enough facts to make a claim plausible, the Court will not impose the burdens of discovery upon Defendant.").

In sum, Francis has not pleaded facts to support claims of gross negligence or malice as to Dovey or Green. Accordingly, they are shielded from suit by statutory immunity as to the State constitutional and tort claims brought against them. And, because Francis did not comply with the MTCA's notice requirement, the State is not a proper defendant. Therefore, all State law constitutional claims (Counts 6, 7, 8, 9) must be dismissed as against the State, Dovey, and Green.

## IV.       Conclusion

As a result of plaintiff's failure to comply with the MTCA's notice requirement, Francis has no colorable claim against the State.  And, despite including new allegations in the Amended Complaint, Francis has not sufficiently alleged malice or gross negligence by Green and Dovey so as to overcome the MTCA's statutory immunity for State personnel.  Rather, he seeks to hold them accountable because of their supervisory positions.

For the foregoing reasons, I shall grant the Motion of the State and the Supervisory Defendants (ECF 78).  Specifically, I shall dismiss, with prejudice, Counts 1, 2, 3, 4, 11, 12, and 13 against Green and Dovey.  I shall also dismiss, with prejudice, Counts 5 and 15 against the State.  And, I shall dismiss Counts 6, 7, 8, and 9, with prejudice, as to Dovey and Green.[22]

An Order follows.


Date:  March 18, 2024                              _____/s/_____

                                                  Ellen L. Hollander
                                                  United States District Judge

---

[22] I rely on my Amended Memorandum Opinion of March 10, 2023 (ECF 75) for additional analysis not included in this Memorandum Opinion.